Alan H. BUSH, C.O. Ted Collins, Jr., Wilford B. Fultz, Richard L. Lowe, Michael W. Milner, Bobby L. Payne, and Walter A. Schmid, Jr., Appellants,

v.

BRUNSWICK CORPORATION, and ICO Transitory, Inc., Appellees.

No. 2–86–059–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 29, 1989.

Rehearing Denied Feb. 13, 1990.

Cantey, Hanger, Gooch, Munn & Collins, Cecil E. Munn and Sloan B. Blair, Fort Worth, for appellants.

Brown, Herman, Scott, Dean & Miles, J. Lyndell Kirkley, Fort Worth, for appellees.

Before JOE SPURLOCK, II, FARRIS and KELTNER, JJ.

## OPINION ON REHEARING

KELTNER, Justice.

The issue in this appeal is whether the parties to a merger agreement intended to allow shareholders a cause of action against the acquiring company for diminution of stock value as a result of alleged breach of the agreement.

We conclude that the agreement does not prohibit such cause of action, hold the trial court erred in entering an order striking the petition for intervention, and remand the cause for further proceedings.

Appellees have filed a motion for rehearing. This court grants the motion and withdraws its opinion and judgment of November 17, 1988, and substitutes this opinion and judgment therefor.

This is an appeal from an order striking a petition in intervention. ICO, as plaintiff, originally sued Brunswick Corporation (Brunswick) and its subsidiary, ICO Transitory, Inc. (Transitory) for anticipatory breach by Brunswick of a Merger Agreement between Brunswick, Transitory, and ICO. The majority shareholders of ICO intervened seeking damages for diminution of the value of their stock.

The underlying lawsuit arose over a proposed merger of ICO into a Brunswick wholly-owned subsidiary. Brunswick desired to acquire all the shares of ICO common stock. As a result, an agreement was reached in which Transitory, a wholly-owned subsidiary of Brunswick, would merge into ICO, thus acquiring all the ICO stock. Under the Texas Business Corporation Act, this type of merger required approval by holders of two-thirds of the ICO shares.

While no one shareholder owned control of ICO, the seven shareholders who are appellants in this case owned 51.2% of the outstanding stock. Six of the seven constituted ICO's board of directors.

Brunswick entered into a Merger Agreement with ICO wherein Brunswick agreed to purchase the outstanding shares of ICO stock for $7 per share upon the performance of numerous conditions precedent.

At the same time, Brunswick reached a separate agreement with the seven controlling shareholders. The Agreement, in part, granted Brunswick the option to purchase all shares of the major shareholders and required the ICO shareholders to give proxies to Brunswick agents for a period of time which included the pendency of the shareholder agreement.[1]

Originally, ICO sued Brunswick and Transitory alleging anticipatory breach of the Merger Agreement. ICO alleged that its damages included the difference between the then current market price of $3.75 per share and the price specified in the Merger Agreement of $7 per share. Brunswick filed a special exception which contended that ICO could not recover for the dimunition in value of stock because it was the shareholders, not the coporation, who were damaged.[2]

As a result, the seven majority shareholders filed a petition in intervention in the lawsuit alleging they were entitled to recover the damage resulting from the dimunition in value of stock brought about by Brunswick's alleged breach of the Merger Agreement. The majority shareholders sought class certification.

Brunswick responded by filing a document entitled "Motion to Strike Intervention." Brunswick sought in part to dismiss the intervention because the intervenors were not entitled to relief under the Merger Agreement. The motion relied on section 10.8 of the Merger Agreement, which provided:

10.8 *Amendment.* This Merger Agreement (a) supersedes all other prior oral agreements and understandings between the parties with respect to the subject matter hereof, and (b) is not intended to confer upon any other person any rights or remedies hereunder....

The trial court granted the motion to strike the plea in intervention on the basis that section 10.8 of the Merger Agreement was an express agreement between the parties that refuted any intent to allow shareholders to sue for a breach of the Agreement. Essentially, the trial court ruled that the shareholders' petition did not state a cause of action. The court's order stated:

It is, therefore, ORDERED, ADJUDGED and DECREED, that Intervenors are *not* parties to said merger agreement or third-party beneficiaries of said agreement *entitled to bring suit to enforce it;* and accordingly, Defendants' Motion to Strike· Intervenors' Plea in Intervention and Original Class Action Petition be, and the same is hereby granted and Intervenors' said Plea in Intervention and Original Class Action Petition is hereby stricken *and dismissed.* (Emphasis Added).

Thereafter, the parties entered into an agreed Order of Severance wherein the shareholders' Petition for Intervention and Original Class Action Petition were severed into a separate suit and the trial court

---

1. The agreement also provided shareholders would: (1) make to Brunswick all the representations and warranties also made by ICO to Brunswick in Article IV of the Merger Agreement; (2) indemnify and hold Brunswick harmless from all losses, liabilities, and damages; (3) contribute $984,561 to the "Escrow Fund" to satisfy obligations; (4) disallow disbursement of the "Escrow Fund" to the major shareholders until Brunswick claims are satisfied; (5) agree to support the merger;· (6) represent that since December 31, 1984, there have not been any events which individually or in the aggregate had a material adverse effect on the financial position or results of operations of ICO; and (7) represent that since the effective date of the

Merger Agreement there have not been any events which individually or in the aggregate have had a material adverse effect on the financial position or results of operations of ICO.

2. The special exception stated:

Any alleged decrease in the value of the stock of Plaintiff corporation could only have affected the individual shareholders. The value of Plaintiff corporation itself would not be affected by the decrease in value of its stock, and, therefore, Plaintiff lacks standing or a justiciable interest to recover for any alleged decrease in the value of stock.

decreed that the Order striking the intervention constituted a final judgment.

The shareholders bring two points of error in this appeal. First, they contend the trial court erred in holding the shareholders were not third party beneficiaries of the Merger Agreement. Second, the shareholders contend the trial court erred in construing section 10.8 of the Merger Agreement to mean that the shareholders "had no rights or remedies under the Merger Agreement...."

Before addressing these central issues, we must examine the burdens placed on the respective parties in an action of this kind and determine the appropriate standard for our review of the trial court's ruling.

TEX.R.CIV.P. 60 allows any person to intervene in a pending suit subject to being stricken by the court for "sufficient cause." In most cases, we accord the trial court broad discretion in deciding a motion to strike a plea in intervention. *Rogers v. Searle*, 533 S.W.2d 440, 442 (Tex.Civ.App. —Corpus Christi 1976, no writ); *Mulcahy v. Houston Steel Drum Co.*, 402 S.W.2d 817, 819 (Tex.Civ.App.—Austin 1966, no writ). Usually, a motion to strike intervention is granted based upon such considerations as the age of the lawsuit, whether the intervention will delay the suit, and whether claims of multiple parties should be joined together.

However, in the case before us, the trial court's Order striking intervention made clear that the trial court was not merely refusing joinder of claims, but the trial court was dismissing the cause of action. Specifically, the order stated "Intervenors are not parties ... or third party beneficiaries ... entitled to bring suit to enforce [the Merger Agreement]." As a result, the trial court not only struck the Petition in Intervention, but dismissed it as well.

Additionally, the trial judge issued a letter opinion to explain the purpose and effect of his decision to grant the motion to strike. Specifically, the trial court ruled that the shareholders were not third party beneficiaries who were entitled to maintain an action under the instrument. As a result, it is clear that the striking of the intervention was not based on the convenience of the parties or the orderly progression of the lawsuit. Instead, it is clear that the court's decision rested entirely upon its interpretation of the Merger Agreement. Therefore, the trial court's order in granting the motion to strike is, in effect, a dismissal of the shareholders' cause of action.

Therefore, the question before us is whether the trial court erred in ruling that the intervenors were not third party beneficiaries who were entitled to maintain an action for breach of the Merger Agreement.

■ Generally, the individual stockholders have no separate and independent right of action for injuries suffered by the corporation which will merely result in the depreciation of the value of their stock. *Massachusetts v. Davis*, 168 S.W.2d 216, 221 (Tex.1942), *cert. denied*, 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943).

■ However, a corporate shareholder may have an action for personal damages for wrongs done to him "where the wrongdoer violates a duty arising from contract or otherwise, and owing directly by him to the stockholder." *Id.* at 222; *Stinnett v. Paramount–Famous Lasky Corp.*, 37 S.W.2d 145, 150–51 (Tex.Comm'n App.1931, holding approved); *Morrison v. St. Anthony Hotel*, 295 S.W.2d 246, 250 (Tex.Civ. App.—San Antonio 1956, writ ref'd n.r.e.); *Cullum v. General Motors Accep. Corp.*, 115 S.W.2d 1196, 1201 (Tex.Civ.App.— Amarillo 1938, no writ).

The shareholders contend that Brunswick breached the Merger Agreement and they were intended third party beneficiaries under the Agreement.

■ Texas courts have long held that the intention of the contracting parties is of controlling significance in determining whether parties are third party beneficiaries. *Corpus Christi Bank and Trust v. Smith*, 525 S.W.2d 501, 503 (Tex.1975). In determining the intention of the parties, we must presume that the parties contract-

ed only for themselves and not for the benefit of third parties, unless it clearly appears that such was the intention of the contracting party. *Id.* at 503–04.

Additionally, in interpreting the contract, we must examine the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless. *Chapman v. Orange Rice Milling Co.*, 747 F.2d 981, 983 (5th Cir.1984); *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 518, 243 S.W.2d 154, 158 (1951). If provisions in the contract appear to conflict, they should be harmonized, if possible, to reflect the intentions of the parties. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex.1983). Therefore, we cannot strike down any portion of the contract unless there is an irreconcilable conflict. *Id.* Furthermore, no single provision taken alone will be given controlling effect; rather, all provisions must be considered with reference to the whole instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983).

Brunswick contends that the section 10.8 phrase, "[t]his Merger Agreement ... is not intended to confer upon any other person any rights or remedies hereunder" demonstrates the intentions of the parties not to grant any rights or remedies to the shareholders in the Merger Agreement. On the other hand, the shareholders assert that the words "other person" does not refer to shareholders, but to "other(s) than those upon whom the Merger Agreement had already expressly conferred rights." The shareholders point us to numerous portions of the Merger Agreement which reference shareholders and the payment of money by Brunswick for shareholders' stock.[3]

The shareholders also point our attention to section 9.3 of the Merger Agreement which deals with the consequences of the termination of the Merger Agreement. Section 9.3 states, in part:

> 9.3 *Effect of Termination.* In the event of the termination of this Merger Agreement ... no party hereto shall have any liability to any other party hereto or its shareholders....

The shareholders argue there was no reason to include the phrase, "or its shareholders" but for the fact that without it, the shareholders of ICO could have had rights and remedies for which liability would have existed.

We next turn our attention to the shareholder agreement, made with the majority shareholders who are parties to this lawsuit. This document was originally executed concurrently with the Merger Agreement, but it was later revised.

Under its terms, the shareholders assumed various burdens, such as: individually making the same representations and warranties as ICO made to Brunswick in the Merger Agreement; agreeing to indemnify Brunswick for certain losses that may be incurred by breach of warranties or representations; depositing $984,561 to an escrow fund to satisfy post-escrow tax claims; and executing a proxy in favor of Brunswick designees for purposes of voting the stock. The consideration for these agreements was Brunswick's promise, under the Merger Agreement, to acquire and pay for 100% of the ICO stock, once certain conditions precedent occurred.

■ Brunswick maintains that the shareholder agreement was a separate agreement, and the only one to which the shareholders were a party. However, the law is well settled that where instruments pertain to the same transaction, they may be read together in order to determine the intention of the parties. *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex. 1984); *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex.1981); *Wasaff v. Lipscomb*, 713 S.W.2d 730, 732 (Tex.App.—Houston [14th Dist.] 1986, no writ). This is true even

---

**3.** Brunswick counters this argument by stating that the Merger Agreement provides that the proceeds were to be paid to a paying agent, to hold until the consummation of the merger. Therefore, Brunswick argues that it had no direct obligation to the shareholders.

We find this argument unpersuasive. It is clear that the shareholders were the ultimate beneficiaries of the payment for the stock.

though the instruments may be executed at different times and do not expressly refer to each other. *Board of Insurance Commissioners v. Great Southern Life Ins. Co.*, 150 Tex. 258, 239 S.W.2d 803, 809 (1951); *U.S. Life Title Co. v. Andreen*, 644 S.W.2d 185, 189–90 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.). In the instant case, the agreements were executed at approximately the same time and refer to each other. Most importantly, the two documents shared a common purpose, the completion of the merger.

▆▆▆ Therefore, we may look to the shareholder agreement for evidence of intent that the shareholders were third party beneficiaries of the Merger Agreement. A review of both documents demonstrates that the shareholders would not only benefit from the merger, but the intention of the parties was ultimately to consummate the merger by the transfer of stock for cash. As a result, we conclude that the shareholders were third party beneficiaries of the Merger Agreement. However, Brunswick maintains that even though the shareholders may have been third party beneficiaries, section 10.8 of the Merger Agreement evidenced an intent to prevent the shareholders from having a legal right to enforce the Merger Agreement. The trial court agreed, and relied upon two cases to support its decision in granting the motion to strike. First is *Knox v. Ball*, 144 Tex. 402, 191 S.W.2d 17 (1945).

In *Knox*, Ball was a general contractor operating under the name of R.F. Ball Construction Company. Ball Construction Company entered into a contract with the City of Houston to build a housing project. The contract allowed subcontracting but also required the subcontractor to maintain worker's compensation and public liability insurance. Additionally, the contract provided that Ball was to remain responsible for any acts and omissions of subcontractors. *Id.*, 191 S.W.2d at 19.

In accordance with the contract terms, Ball Construction Company posted a performance bond issued by National Surety Corporation to ensure its performance under the contract. Ball acted as principal to

the bond and National Surety Corporation acted as surety.

Subsequently Ball subcontracted part of the construction work to W.F. Warfield & Company. In accordance with the subcontract, Warfield purchased the required insurance policies from United Employers Casualty Company. Warfield also posted a performance bond issued by Standard Accident Insurance Company to guarantee its performance to Ball. Warfield acted as principal to the bond and Standard Accident Company acted as surety.

Unfortunately, the insurance premiums were not paid to United Employers Casualty Company. As a result, Knox, as receiver for United Employers, sued Ball for the delinquent premiums that Warfield failed to pay.

The Supreme Court held a cause of action was pleaded against Ball, Ball Construction Company, and National Surety Corporation. *Id.*, 191 S.W.2d at 24. Additionally, the court also held Knox could not recover from Warfield or Standard Accident Insurance Company because the performance bond executed by Warfield & Company was executed exclusively for the benefit of Ball Construction Company and not for the benefit of any third parties. *Id.*, 191 S.W.2d at 21.

As a result, *Knox v. Ball* supports the shareholders' position that third parties can have a right to sue as third party beneficiaries, even if they are not a party to the contract. However, Brunswick cites a passage from that case in support of its position:

> [W]here a contract expressly provides that it is for the benefit of the promisee, … a third person may not sue thereon even though he might otherwise come within its terms as a beneficiary. (Citations omitted.)

*Id.*, 191 S.W.2d at 24.

This portion of the *Knox v. Ball* opinion is dicta because there was no such express provision involved in that case. The Supreme Court's opinion states that the rule was derived from a prior case. *Standard Accident Insurance Co. v. Knox*, 144 Tex.

296, 184 S.W.2d 612 (1944). In that case, the bond contained the following clause:

This bond is made for the use and benefit of all persons, firms and corporations who may furnish any materials, or perform any labor ... and each of them are hereby made obligees hereunder the same as if their own proper names were written herein as such, *and they and each of them may sue hereon.*

*Id.,* 184 S.W.2d at 614 (emphasis added).[4]

In that case, the Supreme Court denied Knox recovery because, "we think the Performance Bonds are too specific in repeatedly naming for whose benefit they were made, and who may sue thereon, to admit of such a construction." *Id.,* 184 S.W.2d at 616.

In the instant case, the shareholders of ICO were repeatedly mentioned in the Merger Agreement as one of the groups of ultimate beneficiaries of the end result of that agreement. Furthermore, unlike *Standard Accident Insurance Co. v. Knox,* there is no specific delineation of parties who may sue on the contract. Therefore, Brunswick's reliance on *Knox v. Ball* and *Standard Accident Insurance Co. v. Knox,* is misplaced. The facts of the instant case differ greatly from those cases. For example, the bond in *Standard Accident Insurance Co. v. Knox* provided the identity of persons who could sue on the agreement. Section 10.8 of the Merger Agreement in the instant case is not specific. Furthermore, the shareholders of ICO were integral participants in the plan of merger.

These facts, taken together with a reading of the two agreements, lead us to conclude that section 10.8 was not intended to bar the shareholders from bringing suit under the Merger Agreement.

The second case relied on by the trial court is *Knight Constr. Co., Inc. v. Barnett Mortgage Trust,* 572 S.W.2d 381 (Tex. Civ.App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.). In that case, a construction loan agreement contained the following clause: "No person who is not a party to

this agreement may rely on the terms hereof except as expressly provided herein." *Id.* at 383.

The Houston court concluded this language expressly refuted any allegation of intent to benefit anyone not a party to that agreement. However, the language in *Knight* is different from the language in the instant case. Specifically, section 10.8 reads in part "is not intended to confer upon any other person any rights or remedies hereunder."

Brunswick would have us read these two phrases as having the same meaning. We cannot. If Brunswick contended the clause to mean "no person who is not a party to the Merger Agreement," it could have negotiated for such a phrase. However, it did not. We conclude that in the peculiar facts of the instant case, the phrase "any other person" as used in section 10.8 refers to persons other than the necessary participants in the merger.

In reaching this conclusion, we have taken great note of the flow of the events in this case, and the specific facts upon which they rely. We do not quarrel with decisions by our sister courts that have declared it is possible to exclude third parties from rights and benefits under a contract, if they do so specifically and with a great degree of clarity. However, this is not the case before us.

On rehearing, Brunswick cites us to the recent case of the *In re Gulf Oil/Cities Service Tender Offer Litigation,* 82 Civ. 5253 (MBM), opinion & order, U.S. Dist. Ct. (S.D.N.Y. September 6, 1989). Brunswick argues that the United States District Court for the Southern District of New York reached the opposite conclusion to our holding interpreting a similar clause.

The New York court did reach the opposite conclusion when interpreting a similar clause. *In re Gulf Oil/Cities Service Tender Offer Litigation,* 82 Civ. 5253 at 40–44. However, that court was faced with facts that are different from the case before us. In the New York case, the plaintiffs/shareholders brought suit for the

---

**4.** Knox was the same party described in *Knox v.*    *Ball,* 191 S.W.2d at 17.

alleged breach of a merger agreement. The shareholders argued they could rely upon an Offer to Purchase Agreement in attempting to interpret the Merger Agreement. Unfortunately, the relevant text of those agreements are not mentioned in the opinion.

Nonetheless, it is clear that both the Offer to Purchase Agreement and the Merger Agreement contained integration clauses which provide that each agreement was the "entire agreement" among the parties. As a result, the trial court ruled the two documents could not be pleaded together to determine the intent of the parties.

By contrast, in the case before us, section 10.8 of the Merger Agreement merely states that it "supersedes all other prior oral agreements and understanding between the parties with respect to the subject matter hereof...." Nothing in the Merger Agreement suggests it supersedes other written agreements or that it constitutes the entire agreement between the parties. Instead, the Merger Agreement refers repeatedly to the shareholders' agreement. Unlike the facts in *Gulf,* the Merger Agreement also contains section 9.3, which provides that in the event of termination, "no party hereto shall have any liability to any party hereto *or its shareholders*...." As stated above, there is no other reason to include the phrase "or its shareholders" but for the fact that without the phrase, the shareholders would have had other rights and remedies.

Additionally, the shareholders' agreement between Brunswick and the seven shareholders does not include an integration clause and does not purport to be the entire or exclusive agreement among the parties. Instead, the Agreement refers repeatedly to the Merger Agreement.

For these reasons, we do not believe the New York case is controlling.

Therefore, we sustain both of the shareholders' points of error.

In its motion for rehearing, Brunswick claims the shareholders cannot appeal the order striking the petition for intervention because of procedural technicalities. Specifically, Brunswick contends the order striking the intervention was an interlocutory order that could not be appealed. *Garza v. Mitchell,* 607 S.W.2d 593, 599 (Tex.Civ.App.—Tyler 1980, no writ). Further, Brunswick claims the shareholders agreed to the order of severance, which expressly provided the interlocutory order striking the intervention became a final judgment. Therefore, Brunswick reasons that shareholders cannot complain of an order to which they agreed.

We find this argument to be disingenuous. To agree that an order can become final, so it can be tested on appeal, does not constitute or imply agreement to the substance or the merits of the order. As stated by our supreme court, "there must be a method by which a party who desires to initiate the appellate process may move the trial court to render judgment without being bound by its terms." *First National Bank of Beeville v. Fojtik,* 775 S.W.2d 632 (Tex.1989).

Having sustained both of the shareholders' points of error, we reverse the trial court's order striking the petition for intervention and remand to the trial court for further proceedings.