**Thomas HENRY and Michael Hearn, Appellants,**

**v.**

**Hector GONZALEZ, Appellee.**

**In re Thomas Henry and Michael Hearn.**

Nos. 04–99–00478–CV, 04–99–00479–CV.

Court of Appeals of Texas, San Antonio.

Jan. 26, 2000.

Rehearing Overruled May 19, 2000.

Richard W. Avery, James I. Smith, Jr., Glast, Phillips & Murray, P.C., Houston, Douglas E. Chaves, Audrey Mullert Vicknair, Mark De Koch, Roberta S. Dohse, Chaves, Gonzales & Hoblit, L.L.P., Corpus Christi, for appellant.

William J. Tinning, Law Offices of William J. Tinning, Portland, David T.. Garcia, Falfurrias, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

Opinion by: KAREN ANGELINI, Justice.

Appellants/Relators, Thomas Henry and Michael Hearn, seek relief from the trial court's denial of their motion to compel arbitration and grant of appellee's motion for summary judgment. Henry and Hearn have filed an interlocutory appeal pursuant to the Texas Arbitration Act and a petition for writ of mandamus pursuant to the Federal Arbitration Act. The two proceedings have been consolidated.

We conclude the Texas Arbitration Act applies; therefore, we deny Henry and Hearn's petition for writ of mandamus. We reverse and remand the trial court's denial of Henry and Hearn's motion to compel arbitration and grant of appellee's motion for summary judgment because we conclude the trial court abused his discretion by holding the termination of the attorney/client contract invalidated the internal arbitration agreement.

### FACTUAL AND PROCEDURAL BACKGROUND

Hector and Noela Gonzalez wished to pursue a medical malpractice action in Falfurrias, Texas, and in March 1997 hired Thomas Henry and Michael Hearn to represent them. Hector Gonzalez executed a contract manifesting this relationship with Henry and Hearn. On December 17, 1997, prior to filing an original petition in the case and approximately two weeks before expiration of the statute of limitations, Henry sent a letter to the Gonzalezes stating the attorneys' intent to terminate the attorney/client contract. The Gonzalezes immediately contacted another attorney, Raul Garcia, who wrote a letter to Henry encouraging him to continue on the case through filing the original petition. Henry

subsequently filed a petition in Corpus Christi, a place of improper venue, against the defendants in the medical malpractice case. Henry did not notify the Gonzalezes or Garcia that he filed the petition, nor did he return the case file to them. Although he signed the petition as the attorney of record, Henry titled it as a "pro se" petition. Henry did not serve the defendants, and the statute of limitations expired without a proper suit being filed.

The Gonzalezes subsequently filed suit against Henry and Hearn alleging causes of action for legal malpractice, breach of fiduciary duty, and violations of the Deceptive Trade Practices Act. The Gonzalezes also sought a declaratory judgment that the arbitration clause in the attorney/client contract was unenforceable and void as a matter of public policy. Henry and Hearn filed a motion to compel arbitration against Hector Gonzalez, contending the attorney/client contract mandated such disposition.[1] The Gonzalezes filed a motion for summary judgment on their declaratory action contending the suit fell outside the original contract, and any arbitration clause was ambiguous. The trial court entered an order granting the Gonzalezes' motion for summary judgment, holding that "no mandatory referral for binding arbitration has been shown by the applicable contract relied upon by the defense to be authorized." It is from this order that Henry and Hearn seek relief by filing a petition for writ of mandamus under the Federal Arbitration Act (FAA) and an interlocutory appeal under the Texas Arbitration Act (TAA). Both the mandamus and the interlocutory appeal address the same issue: the propriety of the trial court's denial of their motion to compel arbitration and the trial court's grant of the Gonzalezes' motion for summary judgment.

Because the Gonzalezes' motion for summary judgment on their request for declaratory relief addressed the same is-

sue as Henry and Hearn's motion to compel arbitration, these two motions compete and complicate the procedural posture of this case. The trial court's order addressing these two competing motions further complicates its posture on appeal. The trial court's order is titled, "ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON DECLARATORY JUDGMENT ACTION/DEFENDANTS' CLAIM OF MANDATORY ARBITRATION." However, in the body of the order the trial court only granted the motion for summary judgment, without specifically denying the motion to compel arbitration. Because the trial court's action effectively denied Henry and Hearn's motion to compel arbitration and because the title of the order implied an intent to address both motions jointly, we may assume Henry and Hearn's motion to compel arbitration was denied.

Although the grant of the Gonzalezes' motion for summary judgment and the denial of Henry and Hearn's motion to compel arbitration had the same effect, this court's review of these types of motions and the parties' burden of proof for each is different and requires different analysis. We will begin with the review of the trial court's action on Henry and Hearn's motion to compel arbitration, as this review most clearly addresses the true substance of all the disputed issues. We will then address the merits of the trial court's grant of the Gonzalezes' motion for summary judgment, which will obviously follow our decision on the trial court's denial of the competing motion to compel arbitration.

### DISCUSSION

Before we proceed on the merits of the dispute, this court must first determine whether state or federal arbitration laws govern this dispute. *See Jack B. Anglin*

---

1. Henry and Hearn concede that the arbitration clause does not apply to Noela Gonzalez because she did not sign the contract. Ac-

cordingly, this appeal relates only to the relationship between Hector Gonzalez and Henry and Hearn.

*Co., Inc. v. Tipps,* 842 S.W.2d 266, 271–72 (Tex.1992); *see also Pepe Int'l Dev. Co. v. Pub Brewing Co.,* 915 S.W.2d 925, 932 (Tex.App.-Houston [1st Dist.] 1996, no writ).[2] The parties attempted to resolve this issue in the attorney/client contract. Provision 10 of the attorney/client contract provides that the "Agreement shall be construed under and in accordance with the laws of the State of Texas, ... and regarding anything covered by this Agreement shall be governed by the laws of the State of Texas." Provision 11, however, provides that all disputes "shall be resolved by binding arbitration pursuant to the Federal Arbitration Act in accordance with the commercial Arbitration Rules then in effect with the American Arbitration Association.... This arbitration provision shall be enforceable ... pursuant to the substantive federal laws established by the Federal Arbitration Act." Contradictory to Provision 11, the contract contains a clause which appears in all capital letters immediately above the signature lines which states: "THIS CONTRACT IS SUBJECT TO ARBITRATION UNDER THE TEXAS GENERAL ARBITRATION STATUTE." Therefore, the contract itself is internally inconsistent as to whether the FAA or the TAA governs.

■ In interpreting the contract, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless. *Bush v. Brunswick Corp.,* 783 S.W.2d 724, 728 (Tex.App.-Fort Worth 1989, writ denied). If provisions in the contract appear to conflict, they should be harmonized, if possible, to reflect the intentions of the parties. *Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 332 (Tex. 1983); *Bush,* 783 S.W.2d at 728. Therefore, we cannot strike down any portion of the contract unless there is an irreconcilable conflict. *Ogden,* 662 S.W.2d at 332.

■ Provision 11 is in irreconcilable conflict with the other relevant portions of the contract. While Provision 11 states that the FAA shall govern any arbitration, we cannot harmonize this provision, and therefore, construe this conflict as drafting error. Additionally, we avoid application of the FAA because performance of the contract does not relate to interstate commerce, and the FAA is implicated in transactions relating to interstate commerce. *See Cantella & Co., Inc. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996); *Anglin,* 842 S.W.2d at 269–70. We strike down Provision 11 and conclude that this dispute is governed by the TAA because: (1) Provision 10 provides that "anything covered" in the contract shall be governed by Texas law, (2) the prominent bold type states that any arbitration will be governed by the TAA, and (3) all parties involved in the suit are Texas residents, the contract was signed in Texas, the contract was to be performed in Texas, only, and the dispute does not relate in any way to interstate commerce. Because we conclude that this dispute is governed by the TAA, we deny appellants' petition for writ of mandamus filed pursuant to the FAA. We now proceed to the merits of the interlocutory appeal.

*Standards of Review and Burdens of Proof*

a) Motion to Compel Arbitration

■ In determining whether to compel arbitration, the trial court must decide the following: (1) whether a valid, enforceable arbitration agreement exists, and (2) if so, whether the claims asserted fall within the scope of that agreement. *Dallas Cardiology Assoc., P.A. v. Mallick,* 978 S.W.2d 209, 212 (Tex.App.Texarkana 1998, writ denied). If the answers to both prongs are affirmative, the trial court has no discretion but to compel arbitration and stay its proceedings pending arbitration. *Id.* The party seeking arbitration has the initial burden to establish his right to the remedy under the first prong; that is, to establish that a valid arbitration agree-

**2.** The trial court did not specify whether it applied the FAA or the TAA to the contract in question, and the parties do not address this issue in their briefs.

ment exists. *Id.* Once the existence of an arbitration agreement has been established, a presumption attaches favoring arbitration. Id. At this point, the burden shifts to the opposing party to establish some ground for the revocation of the arbitration agreement. Such grounds include fraud, waiver, unconscionability, or that the dispute falls outside the scope of the agreement. *Id.* Under the second prong, to determine whether a claim falls within the scope of an arbitration agreement, the trial court must examine the factual allegations of the complaint, rather than the legal causes of action asserted. *Id.* The trial court must resolve any doubt about these issues in favor of arbitration. *Id.*

▇▇▇▇▇ Appellate courts use a "no evidence" standard for review of the trial court's factual determinations. *See Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 820 (Tex.App.-San Antonio 1996, no writ). In a "no evidence" point, we consider only the evidence that supports the fact finding, while disregarding the evidence to the contrary. *Hearthshire Braeswood Plaza Ltd. Partnership v. Bill Kelly Co.,* 849 S.W.2d 380, 384 (Tex.App.-Houston [14th Dist.] 1993, writ denied). If there is any evidence of probative force to support the finding, the trial court's finding must be upheld. *See id.* However, when the trial court decides a matter involving both factual determinations and legal conclusions, we employ the abuse of discretion standard of review. *See Pony Express Courier Corp.,* 921 S.W.2d at 820. Under the abuse of discretion standard, this court defers to the trial court's factual determinations while reviewing legal conclusions de novo. *Id.* Pure legal conclusions, or matters not requiring extrinsic evidence are subject to de novo review under the abuse of discretion standard. *See Id.* at 820 n. 2; *see also Fridl v. Cook,* 908 S.W.2d 507, 511 (Tex.App.-El Paso 1995, writ dis'd w.o.j.).

b) Summary Judgment

In a motion for summary judgment, the movant has the burden of showing there is no genuine issue of material fact, and it is

entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). Evidence favorable to the nonmovant is taken as true, and every reasonable inference in favor of the nonmovant will be resolved in its favor. *Id.* at 548–49. Accordingly, under both analyses, the presumptions lie in favor of Henry and Hearn, as the nonmovants of the motion for summary judgment and as the movants of the motion to compel arbitration.

This court's review of the trial court's denial of the motion to compel arbitration and the grant of summary judgment focuses on the following language of the original attorney/client contract:

11. ARBITRATION

Any and all disputes, controversies, claims, or demands arising out of or relating to this Agreement or any provision hereof, the providing of services by Attorneys to Client, or in any way relating to the relationship between Attorneys and Client whether in contract, tort, or otherwise, at law or in equity, for damages or any other relief, shall be resolved by binding arbitration pursuant to the Federal Arbitration Act in accordance with the commercial Arbitration Rules then in effect with the American Arbitration Association.

Just above the signature line, the contract contained the following inscription:

THIS CONTRACT IS SUBJECT TO ARBITRATION UNDER THE TEXAS GENERAL ARBITRATION STATUTE.

The top of the first page of the contract contains the following inscription:

THIS CONTRACT IS SUBJECT TO ARBITRATION

In their first, second, and third points of error, Henry and Hearn contend the trial court erred by denying their motion to compel arbitration because they established the existence of an arbitration agreement under the Federal Arbitration Act and the Texas Arbitration Act, they

showed that the claims raised by Gonzalez fell within the scope of the arbitration agreement, and Gonzalez failed to show that the agreement was unenforceable.

▪ The primary disputed issue under these points of error relate to Henry and Hearn's burden of proof: the existence of a valid arbitration agreement. This disputed issue is whether Henry and Hearn's termination of the attorney/client contract also terminated any application of the internal mandatory arbitration clause. Because this issue is a question of law, it is subject to de novo review. See Pony Express, 921 S.W.2d at 820.

At the time the attorney/client contract was executed, the TAA provided:

> A written agreement to submit any controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 171.001 (West 1997)(amended by TEX. CIV. PRAC. & REM.CODE ANN. § 171.001(a),(b)(West Supp.2000), effective Sept. 1, 1997).

The issue whether an arbitration agreement survives repudiation of the contract was addressed in Pepe Int'l Dev. Co. v. Pub Brewing, 915 S.W.2d 925, 932 (Tex. App.-Houston [1st Dist.] 1996, no writ). In Pepe, the Houston Court of Appeals recognized that the TAA mandated that the agreement to arbitrate contained in a written contract is separable from the entire contract. Id. (citing Miller v. Puritan Fashions Corp., 516 S.W.2d 234, 238 (Tex. Civ.App.-Waco 1974, writ ref. n.r.e.)(addressing the issue under the FAA)). The Pepe court held that any arbitration agreement contained within the contract is valid and enforceable in spite of any attack made upon the contract as a whole. Id.; Miller, 516 S.W.2d at 238. More recently, the Dallas Court of Appeals followed Pepe in a case brought under the TAA in its present form. See Dallas Cardiology Assoc., 978 S.W.2d at 213; see also TEX. CIV.

PRAC. & REM.CODE ANN. § 171.001(a),(b) (West Supp.2000). The Dallas Court of Appeals held that the arbitration clause contained within a contract between the parties remained in effect and enforceable in spite of any alleged or disputed breach of the contract. Id.

▪ We follow this line of reasoning and hold that an arbitration agreement contained within a contract survives the termination or repudiation of the contract as a whole. See Dallas Cardiology Assoc., 978 S.W.2d at 213; Pepe Int'l Dev. Co., 915 S.W.2d at 932; Miller, 516 S.W.2d at 238. Under this reasoning, the trial court has a duty to determine the validity of an arbitration clause contained in a contract separately from the validity of the contract itself. See Dallas Cardiology Assoc., 978 S.W.2d at 213; Miller, 516 S.W.2d at 238. Accordingly, the trial court abused its discretion by concluding that Henry and Hearn's termination of the contract also terminated the arbitration agreement contained within the contract. See Dallas Cardiology Assoc., 978 S.W.2d at 213; Pepe Int'l Dev. Co., 915 S.W.2d at 932; Miller, 516 S.W.2d at 238. The trial court should have determined the validity of the arbitration agreement regardless of any termination of the contract itself. However, we will review the record to determine whether the trial court's judgment was otherwise proper, or whether the trial court should have ordered arbitration.

The record contains evidence, and the parties do not dispute, that an arbitration agreement existed between the parties, as it was contained within the attorney/client contract signed by Gonzalez. We have determined that Henry and Hearn's termination of the contract did not affect the validity of the internal arbitration agreement. Therefore, Henry and Hearn satisfied their burden of proof to establish their right to the remedy of arbitration. To overcome the application of the arbitration clause to him, Gonzalez was then required to establish some ground for revocation of

the arbitration agreement. *See Dallas Cardiology Assoc.,* 978 S.W.2d at 212.

Gonzalez argues two grounds for revocation of the arbitration agreement: (1) the application of the arbitration clause to this case violates public policy, and; (2) fraudulent inducement. Gonzalez's public-policy contentions are unfounded because well established caselaw favors mandatory arbitration and holds that arbitration does not deny parties their right to a jury trial, as a matter of law. *See Jack B. Anglin Co., Inc.,* 842 S.W.2d at 268; *Fridl,* 908 S.W.2d at 511; *D. Wilson Const. Co., Inc. v. McAllen Ind. Sch. Dist.,* 848 S.W.2d 226, 231 (Tex.App.-Corpus Christi 1992, writ dis'd w.o.j.).

To the extent Gonzalez argues that he was fraudulently induced to sign the contract containing the arbitration clause due to his decreased mental capacity and the fact that the arbitration clause was not conspicuous, his argument fails. An allegation that the contract itself was fraudulently induced is a matter to be decided by the arbitrator. *See In re Weekley Homes,* 985 S.W.2d 111, 115 (Tex. App.-San Antonio 1998, writ denied); *Pepe Int'l Dev. Co. v. Pub Brewing Co.,* 915 S.W.2d at 930. Fraudulent inducement to sign the contract, thus, cannot support the trial court's order denying Henry and Hearn's motion to compel arbitration, as a matter of law.

To the extent Gonzalez argues he was fraudulently induced to agree to arbitration, his argument also fails. Although this question usually requires a fact determination by the trial court, Gonzalez had the burden to prove this issue, and under the "no evidence" standard of review, this court may determine whether the record contains any evidence to support the trial court's judgment. We hold that it does not. To support their motion for summary judgment and in opposition to Henry and Hearn's motion to compel arbitration, the Gonzalezes submitted (1) the original, signed contract; (2) an affidavit of Noela Gonzalez, and (3) Thomas Henry's deposition. The contract reveals that the arbi-

tration clause was noticeable, sufficiently conspicuous, and prominently displayed to alert a person of its presence. Noela's affidavit provides no evidence of fraudulent inducement, but instead contains only argument that she did not know the arbitration clause was contained in the contract and that neither she nor her husband would have signed any contract had they known it contained this agreement. This affidavit is insufficient to show fraudulent inducement of the arbitration agreement because Noela was not present when Hector signed the contract forming the basis of this lawsuit, she cannot attest to her husband's intent or state of mind, and the affidavit does not provide evidence that Henry and Hearn took advantage of any decreased mental capacity. Thomas Henry's deposition does not provide evidence of any ground for revocation of the arbitration agreement. Because we conclude a valid arbitration agreement existed, Gonzalez provided no evidence to support revocation of the arbitration agreement based on fraudulent inducement, and Gonzalez's other contentions of revocation fail as a matter of law, we must continue to determine whether this dispute falls within the scope of the arbitration agreement.

This court may determine this final prong because the parties do not dispute the underlying facts necessary to make this determination, and whether a matter falls within the scope of an arbitration agreement is a question of law to be reviewed de novo. *See Leander Cut Stone Co., Inc. v. Brazos Masonry, Inc.,* 987 S.W.2d 638, 640 (Tex.App.-Waco 1999, no writ). The matters in controversy fall within the scope of the arbitration agreement because the factual allegations forming the bases of the Gonzalezes' legal malpractice and breach of fiduciary duty causes of action necessarily arose from Henry and Hearn's representation of the Gonzalezes under the attorney/client contract. The Gonzalezes' DTPA cause of action falls within the scope of the arbitration agreement because the actions form-

ing the basis of this cause of action related to "the providing of services" by Henry and Hearn to the Gonzalezes, necessarily related to that relationship, and were so factually interwoven with the contract that such action could not stand alone. *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250 (5th Cir. 1998).

We sustain Henry and Hearn's first, second, and third points of error. We need not reach the fourth point of error. Because the evidence shows that a valid arbitration agreement existed, no other ground exists to hold the arbitration agreement revocable, and the claims raised fell within the scope of this agreement, the trial court had no discretion but to compel arbitration. *See Dallas Cardiology Assoc.*, 978 S.W.2d at 212.

In the same respect, the trial court erred by granting summary judgment in favor of Gonzalez. Gonzalez failed to show the absence of any material fact, and failed to show he was entitled to declaratory judgment as a matter of law. To the contrary, the evidence showed that arbitration should have been compelled. Accordingly, we sustain Henry and Hearn's points of error relating to the trial court's granting of the Gonzalezes' motion for summary judgment.

## CONCLUSION

We reverse the trial court's order granting summary judgment and denying the motion to compel arbitration and remand this cause with instructions to the trial court to enter an order compelling arbitration between the plaintiff, Hector Gonzalez, and the defendants, Thomas Henry and Michael Hearn, and staying all other proceedings pending the outcome of the arbitration. We deny Henry and Hearn's petition for writ of mandamus.

Dissenting opinion by: PHIL HARDBERGER, Chief Justice.

PHIL HARDBERGER, Chief Justice, dissenting.

This interlocutory appeal arises from two attorneys' efforts to compel arbitration of a legal malpractice claim against them. The trial court denied the attorneys' motion to compel arbitration. The majority reverses the trial court's order and remands the cause to the trial court with instructions to enter an order compelling arbitration.

Among other issues addressed by the majority is the client's argument that the arbitration provision violates public policy. The majority dismisses this argument in a single sentence, asserting: "Gonzalez's public policy contentions are unfounded because well established caselaw favors mandatory arbitration and holds that arbitration does not deny parties a right to a jury trial, as a matter of law." The majority then cites three cases in support of its assertion, none of which involve an arbitration provision in an agreement between an attorney and a client. Because special public policy considerations are implicated when an attorney imposes an arbitration provision on his or her client, I respectfully dissent.

The legal and ethical implications of arbitration provisions in contracts between attorneys and their clients have been the subject of a number of articles. *See, e. g.,* Clark, *The Legal and Ethical Implications of Pre–Dispute Agreements Between Attorneys and Clients to Arbitrate Fee Disputes*, 84 IOWA L. REV. 827 (1999) (additional authorities cited in footnotes 5–8; cited herein as Clark); Powers, *Ethical Implications of Attorneys Requiring Clients to Submit Malpractice Claims to ADR*, 38 S. TEX. L.REV. 625 (1997) (cited herein as Powers); Jane Massey Draper, B.C.L., Annotation, *Validity and Construction of Agreement Between Attorney and Client to Arbitrate Disputes Arising Between Them*, 26 A.L.R. 5TH 107 (1995). The essence of these articles is that whatever public policy may be served by enforcing arbitration agreements is more than offset

by the public policy of not allowing attorneys to take advantage of their clients. Trust is the essential ingredient in an attorney-client relationship. The great majority of clients are not even close to being in an equal bargaining position with their attorneys. They go to an attorney so the attorney can tell them what to do, not vice-versa.

In a serious personal injury case, such as this, clients are typically deeply in grief and overwhelmed by the circumstances that have come upon them. Pain and disability have entered their lives, and the breadwinner is no longer able to bring home wages for the family. As bills pour in, with no offsetting income, a true state of desperation exists. Are we then to allow attorneys, who represent such clients, to take away their rights to a jury should legal malpractice occur? I agree with the commentators in the cited articles and with the laws established in other jurisdictions that conclude that such a practice is against public policy. Certainly it should be against public policy in the absence of some additional protections for the client, which do not exist in the case.

The traditional advantages of arbitration may not be so advantageous in the context of a legal malpractice claim. For example, the savings of cost and time would likely be more of a disadvantage to the attorney alleged to have committed malpractice than to the client because the client's new attorney will typically be handling the claim on a contingency basis. *See* Powers, 38 S. TEX. L. REV. at 637; *see also Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 268 (Tex.1992) (noting efficiency and lower costs are frequently cited as the main benefits of arbitration). In addition, the ability to pursue the claim in court may provide the client with a bargaining advantage in negotiating with an attorney who seeks to avoid litigation and its potential negative publicity. *Id.*

More importantly, the fundamental fiduciary nature of the attorney-client relationship dictates against an attorney's ability to impose an arbitration condition on a client. Clients are often in vulnerable positions, requiring them to bestow a large amount of trust in their attorneys. "The client's vulnerability vis-a-vis the attorney is often exacerbated by the client's current legal situation. . . . He is neither expecting, nor emotionally prepared, to 'do battle' with his chosen attorney to protect his own rights." Power, 38 S. TEX. L. REV. at 648. Applying general contractual principles to an arbitration provision in the attorney-client context ignores the practical reality that in most instances the attorney and his or her client are not engaged in an arm's length transaction during their initial negotiations. *See* Clark, 84 IOWA L. REV. at 852.

Attorneys generally have a greater advantage over their clients in an arbitration setting. Attorneys are trained to conduct arbitration to the best advantage of their clients, in this case themselves. *See* Powers, 38 S. TEX. L. REV. at 631. Since one of the "selling points" of arbitration is the ability to proceed without an attorney, the client with the malpractice claim may not seek additional counsel, leaving the trained attorney with a distinct advantage. *See id.*

In a profession that is called upon to police itself, how can we justify allowing attorneys to take advantage of those who call upon their services? We cannot. Although the traditional contractual defenses, like unconscionability, may be available to clients who are taken advantage of, such a situation should never be allowed to arise. Clients who are in a weaker bargaining position may not be able to meet the burden of proving unconscionability. *See* Powers, 38 S. TEX. L. REV. at 639–42. This does not mean that the attorney would not have taken advantage of his or her client. It simply means that the legal definition of unconscionability, created by attorneys, is an uncertain road for an already burdened client.

Recognizing these public policy concerns, other states have prohibited or limited the inclusion of arbitration provisions in attorneys' engagement letters. For example, Pennsylvania has adopted a rule

that permits an arbitration provision in an engagement letter only if: (1) the advantages and disadvantages are fully disclosed by the attorney; (2) the client is advised of his right to consult independent counsel and is given the opportunity to do so; and (3) the client's consent is in writing. *See* Clark, 84 IOWA L. REV. at 857–58. Both the District of Columbia and Michigan have taken a more restrictive approach and prohibit arbitration clauses in engagement letters unless the client has the advice of independent counsel. *See id.* at 858–863. Finally, Ohio has taken the most restrictive approach and simply prohibits pre-dispute arbitration agreements between attorneys and their clients. *See id.* at 862–64. Ohio reasons that requiring a client to hire a lawyer in order to hire a lawyer sends the wrong message. *See id.* at 863.

Public policy mandates that some restrictions must be placed on an attorney's ability to include an arbitration provision in an engagement letter. Because no such restrictions were imposed in this case, I would conclude that the arbitration clause violates public policy and affirm the trial court's ruling. I respectfully dissent.