MCI TELECOMMUNICATIONS
CORPORATION, Appellant,

v.

TEXAS UTILITIES ELECTRIC
COMPANY, Appellee.

No. 2–95–194–CV.

Court of Appeals of Texas,
Fort Worth.

Aug. 29, 1996.

Richard A. Valdes, Dallas, McDonald, Sanders, et al., William L. Latham, Fort Worth, for appellant.

Cantey & Hanger, S.G. Johndroe, III, Fort Worth, for appellee.

Before PANEL A: CAYCE, C.J.; DAY and BRIGHAM, JJ.

## OPINION

SAM DAY, Justice.

Appellant MCI Telecommunications Corporation (MCI) appeals from a adverse judgment for breach of contract and negligence rendered in favor of Texas Utilities Electric Company (TU). Several large steel electrical poles erected and maintained by TU as a licensee along a railroad right-of-way began to lean allegedly because of losing lateral support to their foundations as a result of trenching operations by MCI when it laid a fiber optic cable near the poles. After a trial to the court, the court found in favor of TU and rendered judgment for breach of contract and negligence and, in addition to present and future damages, awarded attorneys' fees and interest. In sixteen points of error, MCI asserts that the trial court made various legal, evidentiary, and procedural errors. We affirm.

## BACKGROUND FACTS

In 1973, TU's predecessor, Texas Electric Service Company (TESCO) was granted a license by Texas and Pacific Railway Company, the predecessor to Missouri Pacific Railroad (MoPac), giving TESCO the right to construct an electric transmission line on the railroad's right-of-way. The particular area in question is about a six-mile portion of the line located in East Fort Worth that runs more or less parallel to the railroad tracks. The transmission lines are supported by steel poles, about 85 feet high, attached to concrete and steel foundations. The ground adjacent to the pole foundations provides lateral support to counter or balance out the force of the wind blowing against the poles and conductors and the tension of the conductors.

In 1985, MCI and MoPac entered into an agreement that granted MCI the right to construct and operate its fiber optic systems along the right-of-way. MCI constructed a buried fiber optic system by trenching, laying the cable, and repacking the ground. In several places along the route, MCI installed the cable in close proximity to TU's poles, and at one point, even laid its cable in between the legs of the only two-legged tower on the six-mile route.

In 1992, TU discovered that four of the poles along the right-of-way were leaning.

When TU replaced the old foundations with new foundations, it learned that MCI's cable was in close proximity to the foundations. TU sought to recover its replacement costs from MCI and eventually filed the present suit.

After the suit was filed, TU had MCI locate its fiber optic cable along the entire six-mile portion of the right-of-way. TU evaluated and further analyzed the impact of the alleged loss of lateral support on all of its seventy-four poles along the route and asserted that it was a reasonable probability that five more poles will have to have their foundations replaced in the future. Additionally, TU alleged that eight of another possible seventeen foundations would have to be replaced.

At trial, TU asserted that it was a third-party beneficiary of the agreement between MCI and MoPac because the agreement stipulated that MCI activities not interfere in any way with any existing prior rights. Also, TU alleged that MCI negligently affected the lateral support of its poles, causing the damages. MCI claimed, however, that the cause of the poles' leaning was inadequate design of the foundations themselves and not its trenching operations. In this "battle of the experts," the trial court was presented opposing technical evidence of foundation design and support and the mathematical theories and formulae. Upon consideration of the evidence, the trial court rendered judgment for TU on all its causes of action.

On appeal, MCI has grouped its sixteen points of error into three basic categories: (1) procedural errors; (2) legal errors; and (3) evidentiary errors. We will address MCI's points of error along the same categorical theme.

## PROCEDURAL ERRORS

In point of error three, MCI asserts that the trial court unconstitutionally denied MCI the opportunity to cross-examine TU's expert, Dr. Buchanan, by requiring MCI to instead submit its rebuttal of Dr. Buchanan's testimony in writing. In point of error four, MCI contends that the trial court erred by denying MCI's request to have its expert witness remain present in the courtroom to assist in MCI's cross-examination and presentation of its defenses. We will first address point of error four.

The record clearly indicates that at the beginning of the trial the "Rule" was invoked. *See* TEX R. CIV. EVID. 614; TEX.R. CIV. P. 267. At that time, MCI moved to "invoke an exception to the rule for the experts to advise on technical questions" so that one of its experts could remain in the courtroom. The request was denied by the trial court, and the trial began.

Both codifications of the "Rule" provide that its invocation does not authorize the exclusion of "a person whose presence *is shown by a party* to be *essential* to the presentation of [the] cause." TEX R. CIV. EVID. 614; TEX.R. CIV. P. 267(b) (emphasis added). Although it has generally been held that expert witnesses are exempt from the operation of the "Rule," those cases have addressed situations where a violation of the "Rule" by an expert witness will not justify excluding the witness's testimony. *See Triton Oil & Gas Corp. v. E.W. Moran Drilling Co.*, 509 S.W.2d 678, 685 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.). This is not a case where MCI's expert witness was excluded from testifying. Nothing in *Triton* or its progeny negates the explicit language of the "Rule" itself, as well as pre-rules caselaw, that requires the party seeking the exemption to make a showing to the court why the expert witness's presence is essential to the presentation of the party's case. TEX R. CIV. EVID. 614; TEX.R. CIV. P. 267; *see Missouri K. & T. Ry. v. Smith*, 31 Tex.Civ.App. 332, 72 S.W. 418, 419 (1903, writ ref'd). In the present case, MCI wholly failed to provide the court any showing that the presence of its expert was essential to the presentation of the cause. Accordingly, we hold that the trial

court did not abuse its discretion in denying MCI's request. Point of error four is overruled.

■ In point of error three, MCI complains that the trial court denied it the opportunity to cross-examine Dr. Buchanan before the court by ordering instead that MCI submit its rebuttal of Dr. Buchanan's testimony in writing.

Dr. Buchanan testified as an engineering expert on behalf of TU. His testimony on direct examination concerned the foundations of the poles, soil strengths, load forces, and the original foundation design of the poles. MCI conducted an extensive cross-examination of Dr. Buchanan regarding his use of particular mathematical methods and formulae in arriving at his opinion. Particularly, the cross-examination centered on how Dr. Buchanan's utilization of one formula resulted in disparate answers. Because this was a trial to the court, the court decided to give Dr. Buchanan an opportunity to explain the divergent results of the formula the next day, essentially providing him overnight to review the various mathematical formulae.

The following morning, Dr. Buchanan gave his explanation for the difference in the figures and equations used. On cross-examination, MCI questioned Dr. Buchanan regarding how that explanation was different from his previous deposition and testimony. At the conclusion of Dr. Buchanan's testimony, MCI's attorney moved for a continuance on the basis that, because he was not an engineer, he was not qualified to do any computations in relation to the testimony given by Dr. Buchanan. MCI wanted to depose Dr. Buchanan again and have MCI's expert "run the number." The court denied the request to depose the witness but granted MCI fourteen days to confer with its experts and "present in written form some argument with regard to the issues raised in connection with the overnight deliberations by Dr. Buchanan." Fourteen days later, MCI filed a detailed rebuttal attacking Dr. Buchanan's testimony and use of the equations. Now, on appeal, MCI asserts that the trial court denied MCI due process by requiring that the rebuttal be in written form. We disagree.

In discussing due process considerations in the context of termination of school district employees, the United States Supreme Court said, "The essential requirements of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494, 506 (1985). In *Loudermill,* the Court cited *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), where six justices found "constitutional minima satisfied where the employee had access to the material upon which the charge was based and could respond orally and in writing and present rebuttal affidavits." *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493, 84 L.Ed.2d at 504; *see also Barry v. Barchi,* 443 U.S. 55, 65, 99 S.Ct. 2642, 2649, 61 L.Ed.2d 365, 376 (1979) (no due process violation where horse trainer whose license was suspended "was given more than one opportunity to present his side of the story").

Also exploring the due process guarantee, the Texas Supreme Court has said, "Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *University of Tex. Medical Sch. v. Than,* 901 S.W.2d 926, 930 (Tex.1995). The court added, "What process is due is measured by a flexible standard that depends on the practical requirements of the circumstances." *Id.* One of the factors described by the court as included in the flexible standard was "the risk of an erroneous deprivation of [the private interest that will be affected by the official action] through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.*

In the present case, it is apparent from the record that the trial court afforded MCI an opportunity to present its side of the story, even to the degree of allowing it the last word on the subject, with the assistance of its experts. We conclude, therefore, that MCI was afforded an opportunity to be heard at a meaningful time and in a meaningful manner. We hold that the trial court did not deprive MCI of any due process by requiring a written rebuttal of Dr. Buchanan's testimony regarding the mathematical formulae in question. Point of error three is overruled.

## LEGAL ERRORS

In point of error one, MCI complains that the trial court erred in finding that TU was a third-party beneficiary of the agreement between MCI and MoPac. As a result, MCI argues in point of error two that the trial court erred in finding that MCI had breached the agreement and that TU was entitled to attorneys' fees for the breach of contract.

### Standard of Review

■■■ There were no pleadings of ambiguity with respect to the agreement between MCI and MoPac. Where there is no pleading of ambiguity with respect to a contract, all questions relating to its interpretation become questions of law for determination by the court rather than questions to be decided by the trier of fact. *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 10 (Tex.App.—Dallas 1988, writ denied); *see Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987). Where, as here, the facts are tried to the court without the assistance of a jury, we give to the trial court's fact findings the same deference that we would give to the same findings by a jury. *MJR Corp.*, 760 S.W.2d at 10; *see Baker v. Baker*, 719 S.W.2d 672, 674–75 (Tex.App.—Fort Worth 1986, no writ). On the other hand, a trial court's conclusions of law are not given any particular deference. The ap-

pellate court, as the final arbiter of the law, not only has the power, but the duty, to independently evaluate trial court conclusions of law. *MJR Corp.*, 760 S.W.2d at 10; *see Harry Hines Medical Ctr., Ltd. v. Wilson*, 656 S.W.2d 598, 603 (Tex.App.—Dallas 1983, no writ).

■■■ Ambiguity not having been pleaded and interpretation having become a legal question, we must independently interpret the agreement to determine whether TU was a third-party beneficiary. In interpreting the contract, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless. *Bush v. Brunswick Corp.*, 783 S.W.2d 724, 728 (Tex.App.—Fort Worth 1989, writ denied); *see Chapman v. Orange Rice Milling Co.*, 747 F.2d 981, 983 (5th Cir.1984); *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 518, 243 S.W.2d 154, 158 (1951). If provisions in the contract appear to conflict, they should be harmonized, if possible, to reflect the intentions of the parties. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex.1983); *Bush*, 783 S.W.2d at 728. Therefore, we cannot strike down any portion of the contract unless there is an irreconcilable conflict. *Ogden*, 662 S.W.2d at 332. Furthermore, no single provision taken alone will be given controlling effect; rather, all provisions must be considered with reference to the whole instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Bush*, 783 S.W.2d at 728.

### Discussion

The relevant portions of the agreement between MCI and MoPac that are the subject of the present dispute are the following:

Section 10. *THIRD–PARTY RIGHT-OF–WAY OWNERSHIP*

a. This Agreement is not intended to cover and does not cover any occupancies over rights-of-way or other land owned solely or jointly by another rail-

road company or companies, or others, not subsidiaries of Railroad. Railroad, however, agrees to take steps reasonably necessary or advisable to cooperate and assist MCI in obtaining any approvals of third parties necessary to permit MCI to use any joint facilities or structures or such rights-of-way or land owned by others along the System Segments. Joint ownership includes, without limitation, third party trackage rights. *The rights herein granted are (i) limited to such title and rights as Railroad may have in the property concerned, and MCI shall secure such permission as may be necessary on account of any other existing rights in any third party (including, without limitation, rights of tenants, subtenants, licensees, and others occupying or using the property concerned with Railroad's permission),* and (ii) granted without any warranty, express or implied. *MCI hereby agrees to exercise the herein granted rights in such a manner as not to interfere in any way with any existing prior rights.* MCI hereby agrees that no damages shall be recoverable from Railroad because of any dispossession of MCI or because of any failure of, defect in, or extinction of Railroad's title. [Emphasis added.]

. . . .

### Section 26. *SUCCESSION; NON-ASSIGNABILITY*

a. This Agreement shall be binding upon and insure [sic] to the benefit of the parties hereto and their respective successors or assigns; PROVIDED, HOWEVER, that no assignment hereof or sublease, shall be valid for any purpose without the prior written consent of the other party, and any attempt by one party to assign or license the rights or obligations hereunder without such prior written consent shall be null and void and will give the other party the right, at its written election, to immediately terminate this Agreement or take any other lesser action with respect thereto. The above requirement for consent shall not apply to (i) any disposition of all or substantially all of the assets of a party, or (ii) any corporate merger, consolidation or reorganization, whether voluntary or involuntary.

b. Notwithstanding the provisions of the above subparagraph, MCI and Railroad shall have the right to sublease or assign this Agreement to their wholly-owned subsidiaries, or affiliates, or to a parent company.

c. *Except as provided in this subparagraph, neither this Agreement, nor any term or provision hereof, nor any inclusion by reference, shall be construed as being for the benefit of any party not in signatory hereto.* [Emphasis added.]

Based upon these provisions, TU argues, and the trial court found, that TU was a licensee with rights in existence prior to and at the time of the agreement. Additionally, the court agreed with TU's argument that TU was not a signatory to the agreement and that MCI and MoPac, as signatories in privity, intended the agreement to be made for the benefit of TU as a member of the mentioned class of licensees. The trial court concluded that TU was a third-party beneficiary of the agreement with standing to maintain an action for breach of contract against MCI. MCI argues, however, that Section 26 precludes any finding that TU was a third-party beneficiary.

Generally, a contract only confers rights and duties upon the actual parties to the contract. Occasionally, however, parties may contract not only for their own benefit, but also for the benefit of a third party. *Barnes v. Wendy's Int'l, Inc.,* 857 S.W.2d 728, 730 (Tex.App.—Houston [14th Dist.] 1993, no writ); *see Republic Nat'l Bank of Dallas v. National Bankers Life Ins. Co.,* 427 S.W.2d 76, 79 (Tex.Civ. App.—Dallas 1968, writ ref'd n.r.e.). There is a presumption against third-party beneficiary agreements. *Brunswick Corp.*

*v. Bush*, 829 S.W.2d 352, 354 (Tex.App.— Fort Worth 1992, no writ); *MJR Corp.*, 760 S.W.2d at 12; *Republic Nat'l Bank*, 427 S.W.2d at 80. The general rule, then, is that only the parties to a contract have the right to complain of a breach; however, an exception to this rule is that one who is not in privity to the written agreement may show that he is eligible to bring an action on the contract as a third-party beneficiary. *Bruner v. Exxon Co., U.S.A.*, 752 S.W.2d 679, 682 (Tex.App.—Dallas 1988, writ denied); *Republic Nat'l Bank*, 427 S.W.2d at 79. The intent of the contracting parties is controlling when determining whether a complaining party is a third-party beneficiary. *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503 (Tex.1975); *Brunswick*, 829 S.W.2d at 354; *Bush*, 783 S.W.2d at 727. "In other words, the party claiming third-party beneficiary status will succeed or fail according to the terms of the contract." *Brunswick*, 829 S.W.2d at 354.

■ Moreover, only donee and creditor beneficiaries have enforceable rights. *Id.; Bruner*, 752 S.W.2d at 683. Incidental beneficiaries have no enforceable rights. *Brunswick*, 829 S.W.2d at 354; *MJR Corp.*, 760 S.W.2d at 10. Distinguishing between these types of beneficiaries is not always clear. If the performance promised will, when rendered, come to the third person as a pure donation, he is a donee beneficiary. If, on the other hand, that performance will come to him in satisfaction of a legal duty owed to him by the promisee, he is a creditor beneficiary. *Brunswick*, 829 S.W.2d at 354 (quoting *Breaux v. Banker*, 107 S.W.2d 382, 389 (Tex.Civ.App.—Beaumont 1937), *rev'd on other grounds*, 133 Tex. 183, 128 S.W.2d 23 (1939)). Incidental beneficiaries are all those who are not donees or creditors. *Brunswick*, 829 S.W.2d at 354; *Breaux*, 107 S.W.2d at 389.

In this context, a creditor beneficiary may be defined as a third person to whom the bargain-seeking party (the "promisee" or contract party exacting the particular stipulation) has an ·indebtedness, contractual obligation, or other legally enforceable commitment to the third party, which commitment the bargain-seeker wishes to discharge or protect by stipulating that the bargain-giver (the opposing contract party or "promisor" concerning the particular stipulation) shall deliver a contract performance to the third party. *MJR Corp.*, 760 S.W.2d at 11.

■ The question becomes, then, when looking at the language contained in the agreement, which, if any, category does TU occupy in the present case. Because section 10 of the agreement limited the rights granted to those possessed by MoPac and stipulated that permission must be sought from third parties holding rights (of which "licensees" was included as a named class, a class which TU is a member), it is clear that MCI's promised performance would not result in a pure donation. Accordingly, TU could not be a donee beneficiary. For the same reasons, it is equally clear that by naming particular classes of third-party holders of rights, the contracting parties did not intend these named classes to be mere incidental beneficiaries.

The provisions of section 10 do, however, fit squarely into the above definition conferring creditor beneficiary status on TU. TU was a licensee with an enforceable legal right to lateral support, even against its grantor MoPac. As such, it becomes clear that the intent of the bargain-seeking party (the "promisee" or contract party exacting the particular stipulation, namely MoPac) had a legally enforceable commitment to the third party (TU), which commitment the bargain-seeker (MoPac) wished to protect by stipulating that the bargain-giver (the opposing contract party or "promisor" concerning the particular stipulation, namely MCI) would be required to deliver a contract performance to the third party (TU). We hold, therefore, that it was the clear intent of the contract parties to confer a benefit upon TU as a third-party beneficiary in that MCI was

required to perform the contract in such a manner as not to interfere with TU's rights.

MCI argues that section 26 of the agreement operates in exactly the opposite manner, showing a clear intent to confer no benefit upon anyone other than the signatories. We disagree. We again recall that if provisions in the contract appear to conflict, they should be harmonized, if possible, to reflect the intentions of the parties, such that effect is given to all provisions of the contract so that none will be meaningless. We note initially that to construe section 26 as MCI urges would indeed render section 10 wholly meaningless; however, a construction of section 10 as we have held above does not render section 26 meaningless. Particularly viewing the subject matter of the two sections as signalled by their titles, MCI's argument must fail. Section 10 specifically concerned third-party ownership rights within MoPac's right-of-way, whereas, section 26 specifically addresses succession and assignability of the agreement. It becomes clear, then, that the language included in section 26 refers to benefits conferred on parties not in privity with the signatories by reason of succession or assignment, and not to negate the rights and benefits of mentioned beneficiaries. This court held in *Bush* that despite contract language similar to section 26, the class of "shareholders" that were mentioned in a merger agreement were, nonetheless, intended third-party beneficiaries. *Bush*, 783 S.W.2d at 729–31. Similarly, we hold that the language included in section 26 does not negate the contract parties' intention to establish TU as an intended third-party beneficiary as a member of the named class of "licensees."

Accordingly, because we hold that TU was a third-party beneficiary of the agreement, the trial court did not err in its finding and, therefore, TU had standing to sue on the contract. As a result, the trial court did not err in awarding attorneys' fees in relation to its finding that MCI breached the contract. Points of error one and two are overruled.

## EVIDENTIARY ERRORS

MCI's remaining points of error all complain of the legal or factual insufficiency to support the trial court's judgment. The points can be broken down as follows:

Points of error 5 and 6 complain of the evidence concerning present damage to TU's poles.

Points of error 7 and 8 address the evidence supporting the award for future damages.

Points of error 9 through 13 argue that the evidence was insufficient to prove MCI was more than 50% responsible for TU's damages.

Points of error 14 and 15 complain of the trial court's finding regarding the depth MCI's cable was laid.

Point of error 16 argues that the issue of whether MCI gave TU notice of its trenching operations was not relevant to any theory of liability.

### Standard of Review

Findings of fact in a case tried to the court have the same force and effect as a jury's verdict on jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). We review the trial court's findings of fact by the same standards that are applied in reviewing the evidence supporting a jury's answers. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). In reviewing a no-evidence point of error, we consider only the evidence and inferences that support the challenged finding. *Gregory v. Sunbelt Sav., F.S.B.*, 835 S.W.2d 155, 158 (Tex. App.—Dallas 1992, writ denied). All contrary evidence and inferences are disregarded. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). We uphold the trial court's findings if there is more than a scintilla of evidence to support them. *Stedman v. Georgetown Sav. & Loan Ass'n*, 595 S.W.2d 486, 488 (Tex.

1979). In reviewing a factual sufficiency point of error, we consider all of the evidence. A finding will be set aside only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is wrong and manifestly unjust. *Gregory,* 835 S.W.2d at 158.

Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the finding. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986). Any unchallenged finding of fact that will support the judgment will preclude a reversal of the case. *U.S. Pipeline Corp. v. Kinder,* 609 S.W.2d 837, 841 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.). Conclusions of law may not be challenged for factual sufficiency, but conclusions of law may be reviewed to determine their correctness based upon the facts. *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *overruled on other grounds, Shumway v. Horizon Credit Corp.,* 801 S.W.2d 890, 893 (Tex.1991).

### Discussion

As we mentioned before, this case was a "battle of the experts," with both parties presenting technical evidence of foundation design and support, as well as the mathematical theories and formulae used to support the expert opinions. The record clearly indicates that there was both legally and factually sufficient evidence presented to the court to support each of the court's findings. We decline MCI's invitation to invade the province of the factfinder.

TU presented evidence supporting the normal industry custom of notifying other utilities in the area when conducting digging-type operations. Additionally, there was the contractual requirement of MCI to obtain permission from, as well as conducting operations so as not to interfere with the rights of, TU as a licensee. TU presented evidence to the court regarding four poles that had leaned, their original foundation design, the proximity of MCI's cable to those poles, the replacement of those foundations, and expert opinion testimony regarding the cause of the damages, as well as future damages.

MCI presented its conflicting expert evidence regarding the same subjects. MCI pleaded comparative negligence, and it is clear that the thrust of MCI's evidence related to its claim that the pole foundations were inadequately designed. Particularly concerning MCI's argument concerning the court's finding of the depth of the trenching operations, MCI relies on its evidence showing the actual depth of the cable as located by an electronic locator device, not necessarily the depth of the trench itself. However, there was also evidence presented showing the originally planned depths of the trench.

It is clear from the record that more than a scintilla of evidence existed to support the trial court's findings and judgment. The evidence was, therefore, legally sufficient. Additionally, the conflicting evidence and expert testimony created a fact issue for the factfinder to resolve, and because this was a trial to the bench, the trial court was the exclusive judge of the weight and credibility of the witnesses and the weight to be given their testimony. *Bellefonte Underwriters Ins. Co. v. Brown,* 704 S.W.2d 742, 744–45 (Tex.1986). The opinions of experts or skilled witnesses, even when uncontroverted, are not conclusive on the trier of fact, unless the subject is one for experts or skilled witnesses alone, where the factfinder cannot properly be assumed to have or be able to form correct opinions of his own based upon the evidence as a whole and aided by his own experience and knowledge of the subject. *McGalliard,* 722 S.W.2d at 697. As the trier of fact, the court had several alternatives available when presented with conflicting evidence: it could believe one witness and disbelieve others; it could resolve inconsistencies in testimony; or it could accept lay testimony over that of expert

testimony. *Id.; Harvey v. Stanley,* 803 S.W.2d 721, 724 (Tex.App.—Fort Worth 1990, writ denied). Resolution of the fact questions in the present case fell squarely in the province of the factfinder, and we decline to retry the case on appeal.

We hold that the evidence was both legally and factually sufficient to support each of the trial court's findings of fact, conclusions of law, and judgment. Points of error five through sixteen are overruled.

## CONCLUSION

Because MCI failed to make a showing to the trial court that the presence of its expert witness in the courtroom during the testimony of other witnesses was essential to the presentation of its case, the trial court did not abuse its discretion in denying MCI's request that its expert be excepted from the "Rule." Additionally, because the trial court afforded MCI an opportunity to rebut the testimony of Dr. Buchanan regarding the use of a particular mathematical formula in meaningful time and manner, we hold that the trial court did not deprive MCI of due process by requiring the rebuttal to be in writing.

Moreover, we hold that the trial court did not err as a matter of law in finding that TU was an intended third-party beneficiary to the agreement between MCI and MoPac. As such, the court also did not err in finding that MCI breached the contract or in awarding TU attorneys' fees as a result of the breach.

Finally, we hold that the evidence was both legally and factually sufficient to support each of the trial court's findings of fact and conclusions of law. Accordingly, we overrule all of MCI's points of error and affirm the judgment of the trial court.