COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

TRAVIS HAZLEWOOD, §

§ No. 08-11-00012-CV

Appellants, §

§ Appeal from the

v. §

§ 17th District Court

WILLIAM LAFAVERS, §

§ of Tarrant County, Texas

Appellee. §

§ (TC# 017-224927-07)

§

**O P I N I O N**

Travis Hazlewood ("Hazlewood" or "Appellant") appeals the judgment of the trial court following a bench trial in which the trial court entered a take-nothing judgment against Hazlewood and awarded damages and attorney's fees to William Lafavers ("Lafavers" or "Appellee") against Hazlewood and third-party defendant, Sealy Four Company d/b/a Sweetwater Well Service ("Sealy").[1] Hazlewood brings five issues: (1) error in the trial court's entering of judgment for Lafavers because Lafavers' exclusion of Hazlewood from the well site prevented Hazlewood from either completing or plugging the well; (2) the great weight and preponderance of the evidence required the trial court to find that any damages suffered by Lafavers were caused by Lafavers' exclusion of Hazlewood from the well site; (3) legal and factual insufficiency of the evidence that Hazlewood caused injury to Lafavers; (4) the trial court's findings that Hazlewood suffered no damages as a result of Lafavers' conduct and that Hazlewood is not entitled to recover damages from Lafavers is against the great weight and preponderance of the evidence; and (5) error in

---

[1] This case was transferred from the Second Court of Appeals to this Court pursuant to a docket equalization order entered by the Texas Supreme Court. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2005). We have applied precedent of the Fort Worth Court of Appeals. *See* TEX.R.APP.P. 41.3.

awarding attorney's fees to Lafavers.   Hazlewood also challenges thirty-three (33) of the trial court's findings of fact.[2]   For the reasons that follow, we affirm.

## PROCEDURAL BACKGROUND

Hazlewood filed suit against Lafavers in the District Court of Tarrant County, alleging breach of contract, defamation, and conversion and/or wrongful retention of property.   Lafavers filed affirmative defenses and counter-claims against Hazlewood and Sealy, alleging breach of contract, negligence, promissory estoppel, and violations of the Texas Deceptive Trade Practices Act ("DTPA").[3]   Hazlewood and Sealy answered, asserting affirmative defenses arguing that any obligation owed to Lafavers was excused as a result of Lafavers' conduct and that Lafavers' own actions caused his injury and damages.   Sealy filed a separate counterclaim against Lafavers alleging Lafavers materially breached the contract and caused Sealy damages and made slanderous remarks about Sealy's business.   Before trial, Lafavers obtained a partial motion for summary judgment ("MFSJ") regarding Hazlewood's conversion and defamation claims.   The MFSJ was denied as to Hazlewood's breach of contract claim and other matters.[4]   Following a bench trial from September 8, 2010 through September 14, 2010, the trial court entered a take-nothing judgment as to Hazlewood and Sealy's claims against Lafavers, and awarded actual damages to Lafavers in the amount of $30,980.00 against Hazlewood and Sealy, finding that Hazlewood had

---

[2]  Lafavers has filed a cross-point, asserting that Hazlewood's appeal is frivolous pursuant to TEX.R.APP.P. 45, which we address below.

[3]  Causes of action for fraud and negligent misrepresentation were abandoned in amended pleadings.

[4]  Hazlewood filed a motion to review the MFSJ as to the conversion claim on August 26, 2010.   We find nothing in the record to indicate that the trial court ruled on this motion.   However, the motion to review was filed after the MFSJ was granted and before the date the trial commenced, and there is nothing indicating that the court changed its mind after receiving the motion, which was essentially a motion for reconsideration.   The motion was eventually overruled by operation of law.   *See e.g., Lattrell v. Chrysler Corp.*, 79 S.W.3d 141, 146 (Tex.App.--Texarkana 2002, pet. denied)( motion to reconsider overruled by operation of law though there was no record of hearing).

knowingly and intentionally violated the DTPA. The trial court also awarded prejudgment interest and attorney's fees in the amount of $105,000.00. The court issued findings of fact and conclusions of law on November 5, 2010. Hazlewood timely appealed.

## FACTUAL BACKGROUND

Sealy initially began as a company drilling oil and gas wells, later drilling water wells in the area north of Fort Worth. Sealy operated under the assumed name of Sweetwater Well Service ("Sweetwater"). Hazlewood, not Sealy, was the party who held the water well drillers license. Hazlewood acted as general manager and general partner of Sealy and individually performed and supervised all of the work on the well at issue ("the Well"). The structure and organization of Hazlewood's business was not revealed to Lafavers until after the lawsuit commenced.

Lafavers wanted a well that would provide water for irrigation, his home, and three additional homes. Hazlewood discussed Lafavers' requirements with him in early 2007 and according to Lafavers, Hazlewood advised that he had drilled hundreds of wells. Hazlewood stated that while he could not guarantee water, the likelihood of not having water was almost zero.[5] Hazlewood advised that he would drill into the Paluxy Aquifer ("Paluxy") at a depth of approximately 800 feet and that the Paluxy water should take care of Lafavers' needs. Hazlewood prepared a graph showing Lafavers where the water and different geographic formations were located. He also explained: the actions necessary to obtain water suitable for residential use; where the Paluxy Aquifer was; how much water could be produced from the Well; and that the Well would be sealed with concrete to a depth of at least 250 feet in order to seal the Well from the Woodbine Aquifer ("Woodbine"). This was to prevent commingling of the

---

[5] Water was found in producing quantities.

3

aquifers.  Woodbine is only useable for irrigation, due to the high presence of iron and other minerals and chemicals.

Hazlewood, Sweetwater, and Sealy entered into a written contract ("the Contract") with Lafavers in April of 2007 agreeing that Sweetwater would drill a water well on Lafavers' property in Southlake, Texas.  The Contract provided that Hazlewood would drill and complete the well pursuant to the laws and regulations of the State of Texas, as prescribed by the Texas Department of Licensing and Regulation ("TDLR").  Under the terms of the Contract, Hazlewood, Sweetwater, and Sealy were required to complete the Well by installing casing, screening, and gravelling the aquifers, cementing the casing, sealing the well, developing the water flow, installing the electric submersible pump, producing tubing, wellhead, and surface controls, and installing the tank.

Hazlewood, Sealy, and Sweetwater represented to Lafavers, in the presence of witnesses, that a ten horsepower ("hp") motor, requiring the installation of three-phase electricity, would be necessary to ensure sufficient pressure for all of the locations.  The written contract does not state what horsepower pump Hazlewood would install, however Hazlewood testified that the "standard contract" he used provides for a five horsepower pump.

Work began on April 28, 2007, and the drilling process was concluded on Friday, May 4, 2007.  Hazlewood stated that he capped the well casing with a pipe extending approximately eighteen inches above ground before leaving the site that day.  However, he admitted that the first time he told anyone he had done so was at the trial itself.  Testimony from a TDLR investigator challenged Hazlewood's statement, indicating that there was not a proper cap on the well.  Heavy rains occurred that weekend, and when Hazlewood returned to the well site on Monday, May 7,

4

2007, he discovered that the well bore had been breached, collapsed, and obstructed at a depth of approximately twenty feet below the surface. Hazlewood testified that he decided to seal the upper part of the well and continue the work later. Hazlewood attached an extension to the top of the pipe, then purchased concrete and began to pour the dry concrete directly into the well bore onto the standing water above the obstruction.[6] Hazlewood testified that he continued to add dry concrete mix into the hole until there was dry concrete mix visible two feet below the surface, in order to create a concrete slurry in the pipe. Hazlewood testified that state rules do not prevent mixing water and concrete in the ground to produce a slurry to seal the top of a well. Hazlewood testified: "It's much like putting in fence posts out at the farm. You pound it out until it gets right, then you pour some more cement mix in, put a little bit of water in it and keep working it around until it's right and work my way up." Hazlewood testified that after he had sealed the surface, he advised Lafavers that he would return in a day or two to complete the Well, after it had dried out, at which point Hazlewood alleged that Lafavers began "[flying] off the handle," and refused to allow Hazlewood to return to his property.

Lafavers testified that he observed Hazlewood pouring dry concrete mix into the Well Monday morning. Lafavers later spoke to Brad White, an employee of Hazlewood, and asked whether that was the "right way" to handle the Well. White advised Lafavers that there were likely other issues he should be made aware of and that White would have Richard Evans, Hazlewood's driller, call him. Following that call, Lafavers confronted Hazlewood about the concrete, and Hazlewood stated "that's a perfectly legitimate way to do it." At some point after the dry cement was poured into the Well, Hazlewood fired White and Evans.

---

[6] Witnesses throughout the testimony use the terms "concrete" and "cement" interchangeably. We will use the term "concrete" in this opinion.

Hazlewood testified that he subsequently called Lafavers several times. Lafavers testified that he next spoke to Hazlewood approximately two weeks after May 8, 2007 and asked him to remove a trailer from Lafavers' property. Later, Hazlewood approached Lafavers with a revised contract stating that Hazlewood would either walk away from the job, pay Lafavers $980 and walk away, or Hazlewood would install the 10 horsepower pump if Lafavers would pay extra for it. Lafavers refused. Hazlewood later contacted Lafavers about removing a backhoe from Lafavers' property.

Lafavers filed a complaint with the TDLR regarding the well on June 25, 2007.[7] The TDLR investigated and determined that the Well was never properly completed, and after gathering water samples, discovered that the breach and the failure to properly seal the breach in accordance with Texas law caused the Woodbine Aquifer to contaminate the Paluxy Aquifer, rendering the water in the Well unusable for residential purposes.

At trial, a retired TDLR investigator who investigated the pump and obstruction at the Well testified that: (1) pouring dry cement into the annular space of the Well and mixing it in the hole with standing water does not meet TDLR standards of a slurry; (2) a slurry requires a ratio of one part cement to seven parts water; (3) the proportionate ratio for a slurry cannot be determined by pouring dry cement into the annular space of a well and trying to mix it at a depth 18-20 feet; (4) it would be difficult, if not impossible to mix cement and water at a depth of 18-20 feet using a PVC pipe as Hazlewood claimed he did; and (5) when mixing cement and water it should be mixed in a

---

[7] During the investigation, letters were sent by both Hazlewood and Lafavers regarding returning to the property and resolving issues with the Well. A TDLR investigator sent Lafavers a letter on October 31, 2007, where the TDLR noted three violations of Texas regulations in relation to the well and advised that the TDLR had determined that Lafavers should let Hazlewood back on to the property to allow Hazlewood to either correct all violations or to plug and reimburse, otherwise Lafavers would be held responsible. Lafavers' attorney responded with a letter setting out conditions under which Hazlewood would be allowed back on the property. Hazlewood declined to accept the conditions, as set out in the TDLR's report.

6

container in the proper ratio then pumped or poured into the well.

The TDLR eventually found that Hazlewood committed violations of various state statutes or rules, specifically: (1) failure to place a cover or cap over the boring or casing, in violation of 16 TEX.ADMIN.CODE § 76.702(d); (2) failure to include requisite TDLR information on an invoice to perform water well drilling services, a violation of 16 TEX.ADMIN.CODE § 76.706(d); (3) failure to properly cement the annular space of a water well, violating 16 TEX.ADMIN.CODE § 76.1000(a)(1) and (2); and (4) failure to drill a well in a manner which prevented commingling of separate aquifers of different chemical content, violating 16 TEX.ADMIN.CODE § 76.1000(d).[8]

In the findings of fact and conclusions of law issued after the bench trial, the trial court specifically found that: (1) Hazlewood never returned to the property to try and do anything further with the Well or to install the pump and tank; (2) because of the obstruction and length of time the Well remained uncompleted it is no longer repairable; (3) Hazlewood never stated in discovery that Sealy and/or its shareholders was a potential party and failed to do so until Hazlewood filed his Second Amended Petition, which was filed after the expiration of the discovery period and the deadline to disclose experts; (4) Hazlewood did not intend to seal the Well with cement from the surface to a depth 20 feet below when Hazlewood had represented to Lafavers that the Well would be sealed with cement to a depth of 250 feet in order to prevent commingling; (5) Hazlewood, Sweetwater, and Sealy allowed the Paluxy and Woodbine Aquifers

---

[8] These allegations were found to be supported by evidence following an administrative hearing before the State Office of Administrative Appeals, and set out in a Proposal for Decision ("PFD"). Public records indicate that the PFD was accepted by the Texas Commission of Licensing and Regulation at a public meeting on May 19, 2009. *See* http://www.tdlr.state.tx.us/Minutes/Commins/commin051909.htm (last visited October 9, 2012). Counsel for Appellant advised the trial court that this matter was appealed to the District Court in Travis County, but there is no record of the final disposition of the matter in the record before this Court. Further search of public records indicates that on remand from the 353rd District Court of Travis County, the TLDR reconsidered an appropriate administrative penalty for violation of the disclosure requirements of 16 TEX.ADMIN.CODE 76.706(d) against Hazlewood on June 29, 2012. *See* http://www.license.state.tx.us/Minutes/Commins/commin062912.htm (last visited October 9, 2012).

to commingle; (6) Hazlewood and Sweetwater failed to timely complete the Well, failed to seal the Well pursuant to state law and TDLR statutes, and allowed an obstruction in the well bore rendering the Well unusable; (7) Hazlewood, Sealy, and Sweetwater never intended to seal the annular space of the Well, in particular, in order to seal off the Woodbine Aquifer; (8) the Well was not drilled in a good, workmanlike manner; (9) Hazlewood, Sealy, and Sweetwater's conduct was in violation of the DTPA and was both knowing and intentional; and (10) the conduct of Hazlewood, Sweetwater, and Sealy was negligent.

## DISCUSSION

Hazlewood raises five issues on appeal:   error in the trial court's entering of judgment for Lafavers because Lafavers' exclusion of Hazlewood from the well site prevented Hazlewood from either completing or plugging the well; the great weight and preponderance of the evidence required the trial court to find that any damages suffered by Lafavers were caused by Lafavers' exclusion of Hazlewood from the well site; legal and factual insufficiency of the evidence that Hazlewood's violations of Texas law caused injury to Lafavers; the trial court findings that Hazlewood suffered no damages as a result of Lafavers' conduct and that Hazlewood is not entitled to recover from Lafavers is against the great weight and preponderance of the evidence; and error in the award of attorney's fees to Lafavers.   Hazlewood also challenges thirty-three findings of fact.

Moreover, Hazlewood's brief raises the following issues:   (1) testimony regarding requirements of a completed well is not relevant to the issues before the Court; (2) Lafavers' conduct excused Hazlewood from completing the well; (3) Lafavers did not allow Hazlewood to complete or repair the well; (4) Lafavers' silence on the issue and the documents he produced

8

support Hazlewood's testimony that he was not allowed to return to the well site; and (5) Lafavers refused to allow Hazlewood to return, two months after the TDLR completed its investigation of the Well site. Of these issues, Hazlewood only cites to any authority on point two. The remaining points are generally argument and cites to the record, however Hazlewood does argue that "[t]he great weight and preponderance of the evidence" proves that Lafavers refused to allow Hazlewood to reenter the site (point five of Hazlewood's argument). Hazlewood further argues that "[t]he findings of fact to the contrary are manifestly unjust, and the Court should conclude those findings are against the great weight and preponderance of the evidence . . . ."

### Unchallenged Findings of Fact

When findings of fact are filed and unchallenged they occupy the same position and are entitled to the same weight as the verdict of a jury. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the finding. *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 993 S.W.2d 663, 672 (Tex.App.--Fort Worth 1996), *aff'd in part and rev'd in part*, 995 S.W.2d 647 (Tex. 1999)(reversing take-nothing decision on attorney's fees and affirming remainder of opinion), *citing McGalliard*, 722 S.W.2d at 696; *Raman Chandler Properties, L.C. v. Caldwell's Creek Homeowners Ass'n, Inc.*, 178 S.W.3d 384, 397 (Tex.App.--Fort Worth 2005, pet. denied); *Samuelson v. United Healthcare of Tex., Inc.*, 79 S.W.3d 706, 708 (Tex.App.--Fort Worth 2002, no pet.). Any unchallenged finding of fact that supports the judgment will preclude a reversal of the case. *U.S. Pipeline Corp. v. Kinder*, 609 S.W.2d 837, 841 (Tex.Civ.App.--Fort Worth 1980, writ ref'd n.r.e.); *MCI Telecommunications*, 993 S.W.2d at 672 (noting same).

9

Hazlewood did not challenge thirty-nine findings of fact. Some of the unchallenged findings include: Hazlewood, after pouring the dry concrete mix into the well, fired his employees "and never returned to try and do anything further with the well, or install the pump and tank" (Finding 28); Hazlewood, Sweetwater, and Sealy violated 16 TEX.ADMIN.CODE § 76.706(d) in failing to indicate required information on their invoice (Finding 30); Hazlewood, Sweetwater, and Sealy made representations that they would seal the annular space of water wells with concrete or bentonite by pumping the concrete or bentonite from the bottom of the well hole to the surface, but failed to do so for the Well and in fact, removed the pump and bentonite from the Well site and instead poured bags of dry concrete mix into the annular space (Findings 20, 21, and 27); water samples taken from the Well showed presence of Woodbine water sands (Finding 36); water from the Well is unsuitable for domestic or residential use (Finding 38); the Well is not repairable due to the obstruction and length of time it has remained uncompleted (Finding 39); and Hazlewood, Sweetwater, and Sealy suffered no damages, either based on any comments made by Lafavers or during the time a backhoe was left on Lafavers' property (Findings 46, 47, and 48). Findings 15 and 52 establish the actual damage determination of the trial court.

**Standards of Review**

When reviewing challenges to the factual sufficiency of the evidence, we consider all the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The finder of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). The fact finder may choose to believe one witness and disbelieve others. *McGalliard*, 722 S.W.2d at 697. If

10

sufficient competent evidence of probative force exists to support the finding, it must be sustained. *In re B.R.*, 950 S.W.2d 113, 121 (Tex.App.--El Paso 1997, no pet.). Where conflicting evidence is present, the fact finder's determination on such matters is generally regarded as conclusive. *Cass v. Stephens*, 156 S.W.3d 38, 56 (Tex.App.--El Paso 2004), *judgment vacated on other grounds*, 538 U.S. 1054, 123 S.Ct. 2213, 155 L.Ed.2d 1103 (2003)(memo.).

Because this was a trial to the bench, the trial court was the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *MCI Telecommunications, Corp.,* 993 S.W.2d at 672, *citing Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744-45 (Tex. 1986). As the trier of fact, the trial court has several alternatives available when presented with conflicting evidence: it could believe one witness and disbelieve others; it could resolve inconsistencies in testimony; or it could accept lay testimony over that of an expert. *MCI Telecommunications, Corp.,* 993 S.W.2d at 672-73, *citing Harvey v. Stanley*, 803 S.W.2d 721, 724 (Tex.App.--Fort Worth 1990, writ denied). Resolution of the fact questions fall squarely in the province of the fact finder, and we will not retry the case on appeal. *MCI Telecommunications, Corp.,* 993 S.W.2d at 673.

## I. Exclusion from the Well site

Hazlewood first asserts error in the trial court's entering of judgment for Lafavers because Lafavers excluded Hazlewood from the well site, thereby preventing Hazlewood from either completing or plugging the well. His second point of error is that that the great weight and preponderance of the evidence required the trial court to find that any damages suffered by Lafavers were caused by Lafavers' exclusion of Hazlewood from the well site. Hazlewood's fourth point of error is that the trial court's findings that Hazlewood suffered no damages as a

11

result of Lafavers' conduct and that Hazlewood is not entitled to recover damages from Lafavers are against the great weight and preponderance of the evidence. Hazlewood vigorously argues that Lafavers' conduct resulted in Hazlewood not being able to return to the Well site and either complete or repair the Well, thus establishing an affirmative defense of excused performance. [9] We disagree.

Hazlewood cites three cases in support of his excused performance argument. In *L. H. Land Painting Co., Inc. v. S & P Const., Inc.*, 516 S.W.2d 14 (Tex.Civ.App.--Fort Worth 1974, pet. dism'd), a plaintiff contractor sued a subcontractor for a breach of warranty committed when the subcontractor failed and refused to correct defects in a façade it built. The subcontractor raised the defense that he was engaged in repairing and replacing the defects in the façade when he received word to cease work and was never thereafter instructed to continue work. The jury found that the subcontractor was excused from performance of the contract, however the trial court disregarded this finding and entered a judgment notwithstanding the verdict in favor of the contractor, noting the evidence was insufficient. *L.H. Land Painting Co., Inc.*, 516 S.W.2d at 15-16. That ruling was reversed on appeal. The court of appeals noted that the subcontractor: performed at the direction of the contractor; had ordered materials so the façade panels could be reinstalled; was replacing panels which fell off and panels which had not; brought additional employees to work on the repairs; was performing work in compliance with an earlier directive from the architect on the project and was installing the boards in an acceptable and approved manner; and the subcontractor was stopped from performing the work after having performed the

---

[9] We note that once Hazlewood breached the contract, Lafavers had the choice of either continuing or ceasing performance of the contract. *Board of Regents of University of Texas v. S & G Const. Co.*, 529 S.W.2d 90, 96-7 (Tex.Civ.App.--Austin 1975, writ ref'd n.r.e.). Hazlewood's cited legal authority fails to acknowledge this fundamental provision of contract law, which has been applied to construction contracts. *Id.*

12

repairs for a week.  *Id.* at 17.

Here, one of the unchallenged findings of fact issued by the trial court clearly found that Hazlewood, after dumping the dry concrete mix into the well, fired his employees then left the Well site and never returned.[10]  The record indicates that Hazlewood was performing the work in a manner which was not approved under applicable Texas law.  The record further shows that when Hazlewood left for the weekend after completing drilling but before completing the Well, he "capped" the Well in a manner which, according to a TDLR investigator's testimony, was not approved under Texas law.  Unlike the subcontractor in *L.H. Land*, the record reflects that Hazlewood had not been performing his work in an approved and acceptable manner, and had breached the terms of the Contract with Lafavers by performing work in contravention of applicable state law.  Further, instead of bringing in additional employees and working in compliance with earlier directives, as was done in *L.H. Land*, Hazlewood's repair work was also in contravention of state law.

Hazlewood next cites *Rich v. McMullan*, 506 S.W.2d 745, 747 (Tex.Civ.App.--San Antonio 1974, writ ref'd n.r.e.).  The *Rich* case involved a suit to compel vendors to specifically perform on an earnest money contract for the sale of a homestead ordered by the court following a summary judgment hearing.  *Rich*'s reference to excusal of performance was related to an argument raised by the vendors that they signed the contract with the understanding that the contract would be modified and, as the modification did not occur, the vendors were excused from performance.  *Id.* at 748.  Those facts are inapposite to the case before us.  The *Rich* court notes a principle of contract law which, in light of the facts here, more likely supports Lafavers' position:

---

[10]  This unchallenged finding is binding unless the contrary is established as a matter of law or there is no evidence to support the finding.  *MCI Telecommunications Corp.,* 993 S.W.2d at 672.

13

"It is elementary that one who prevents or makes impossible the performance of a condition precedent upon which his liability under a contract is made to depend cannot avail himself of its nonperformance." *Id.* at 747, *citing* 17 AMER.JUR.2D, Contracts, Section 427, p. 882. Hazlewood made it impossible to perform a condition precedent when Hazlewood fired his employees and left the Well site, never to return, thus preventing the completion of the Well pursuant to the terms of the Contract. Hazlewood cannot then rely on the nonperformance to his benefit.

Finally, Hazlewood also cites *Dorsett v. Cross*, 106 S.W.3d 213 (Tex.App.--Houston [1st Dist.] 2003, pet. denied) in support of his argument that Lafavers' conduct excused Hazlewood from completing the Well. Again, this case supports Lafavers' position, as the court of appeals affirmed a jury's verdict finding that a purchaser of stock's failure to satisfy a condition precedent did not excuse his failure to perform a stock sale agreement. The court in *Dorsett* noted that a breach of contract occurs when a party fails or refuses to do something he had promised to do. *Dorsett*, 106 S.W.3d at 217. This case is also distinguishable on its facts, as it concerned a stock purchase transaction with an associated promissory note containing specific conditions precedent. *Id.* at 217-18. Here, Hazlewood prepared a contract where he promised Lafavers he would construct a well and do so in accordance with applicable Texas law. A review of the record supports the trial court's determination that the initial breach of the contract was caused by Hazlewood.

Hazlewood argues that testimony regarding the requirements of a completed well is not relevant to the issues before this Court. He asserts "[t]his is not a case about failing to properly complete a well" and it is unnecessary to address the substantial testimony provided by the TDLR

14

and other witnesses regarding Hazlewood's construction of the Well. Hazlewood provides this Court with no authority to support his argument.

The primary purpose of the Contract, which Hazlewood alleges was breached through Lafavers' actions, is that Hazlewood would construct the Well in accordance with applicable state law, as promulgated by the TDLR. Lafavers' counter-claim asserted a breach of the Contract by Hazlewood. The testimony of the TDLR was heard and accepted by the trial court and the evidence was relevant to rebut Hazlewood's contentions. The unchallenged finding that the TDLR investigated and determined that a breach of the well casing caused the Woodbine Aquifer to commingle with the Paluxy Aquifer is supported by the evidence. The TDLR rules require:

> All wells, especially those that are gravel packed, shall be completed so that aquifers or zones containing waters that differ in chemical quality are not allowed to commingle through the borehole-casing annulus or the gravel pack and cause quality degradation of any aquifer or zone.

16 TEX.ADMIN.CODE § 76.1000(d)(2012)(Tex. Dep't of Licensing and Regulation, Locations and Standards of Completion for Wells).

The record is clear that Hazlewood violated provisions of Texas law by allowing the aquifers to commingle, thus breaching the Contract on that point alone. The testimony of the TDLR was relevant to this determination and is supported by competent evidence.

At trial Hazlewood testified that he last left Lafavers' property on May 7, 2007. Hazlewood further testified that he had attempted to call Lafavers several times by mid-May, but was told not to attempt to repair the Well or return to the property. Following the commencement of the TDLR investigation, there is evidence of correspondence between the parties, including the TDLR advising Lafavers to allow Hazlewood on the property, and Lafavers setting out terms and conditions under which he would allow Hazlewood to return to the Well site. Hazlewood

15

ultimately chose not to accept Lafavers' terms and conditions. Lafavers testified that; he never had any communication with Hazlewood where Lafavers barred Hazlewood from the property; Lafavers asked Hazlewood when he would return and finish the Well; and Hazlewood left and did not return after Lafavers' refused to amend the Contract. Hazlewood's former employee Brad White testified via deposition that Hazlewood had the opportunity to complete the Well but simply chose not to do so. The expert witness from the TDLR's Water Well Drillers Program testified that any delay by Lafavers in allowing the TDLR to investigate the Well was reasonable; that Lafavers allowed Hazlewood access to the property to do any corrective work; that the State was prepared to return to determine whether Hazlewood's violations had been corrected; and that Hazlewood demanded a hearing before the TDLR (resulting in the later SOAH proceeding), instead of returning to correct his work.

Our review of all of the evidence, leads us to conclude that the trial court's determination relative to Hazlewood's assertion of excused performance was not so contrary to the overwhelming weight of the evidence that it was clearly wrong and unjust. *Cain*, 709 S.W.2d at 176. The great weight and preponderance of the evidence supports the trial court's judgment. Hazlewood's first, second and fourth issues are overruled.

## II. Error relating to Appellant's state law violation

Hazlewood's third issue asserts that the evidence is legally and factually insufficient to support the trial court's finding that Hazlewood's violations of Texas law caused injury to Lafavers.

Hazlewood has wholly failed to direct us to any authority regarding his legal sufficiency challenge. Furthermore, Hazlewood has not asked for relief consistent with a legal sufficiency

16

challenge.   Because Hazlewood failed to adequately brief his legal sufficiency issue, we will limit our review to his factual sufficiency claims.   *Vantil v. State*, 884 S.W.2d 212, 213, n.1 (Tex.App.--Fort Worth 1994, no pet.h.); TEX.R.APP.P. 38.1(h) and (i); *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 486 (Tex.App.--Dallas 1995, writ denied)(bare assertions of error, without argument or authority, waive error); *Devine v. Dallas County*, 130 S.W.3d 512, 514 (Tex.App.--Dallas 2004, no pet.)(party waives issue on appeal by failing to adequately brief complaint).

Turning to Hazlewood's factual sufficiency challenge that his violations of TDLR rules and regulations, did not cause injury to Lafavers, we note that Hazlewood does not point this Court to any specific authority.   The trial court found that Hazlewood failed to comply with numerous provisions of Texas law.   Because Hazlewood challenged these findings, we address them below.

Thomas Frist, a TDLR investigator, testified as an expert witness via deposition at the trial and his testimony supports a number of the trial court's findings of fact.   Finding 29 states that Hazlewood, Sealy, and Sweetwater failed to properly cap the Well.   Mr. Frist testified that he investigated and found that there was not a proper cap on the Well, a violation of 16 TEX.ADMIN.CODE § 76.702(d).   Mr. Frist testified that Hazlewood failed to pressure pump cement into the annular bore from the bottom up, instead he poured it into the well from the top down, a violation of 16 TEX.ADMIN.CODE § 76.1000(a)(1).   Findings 22, 23, 24, and 25 all concern Hazlewood's failure to seal off the Woodbine Aquifer from the Paluxey Aquifer in the annular space of the well with pumped concrete or bentonite.   Mr. Frist testified that doing so violated Texas law.   Finding 31 held that Hazlewood failed to properly cement the annular area of the Well as required by 16 TEX.ADMIN.CODE § 76.1000(a)(1).   This finding is supported by

17

Mr. Frist's deposition testimony. Finding 32 states that Hazlewood, Sealy, and Sweetwater failed to drill the well in a manner to prevent commingling of the aquifers, in violation of 16 TEX.ADMIN.CODE § 76.1000(d), a finding also supported by Mr. Frist's deposition testimony. Finding 19 held that Hazlewood, Sealy, and Sweetwater failed to drill and complete the Well pursuant to TDLR rules and regulations. This finding is also supported by the evidence and testimony noted above.

A thorough review of the record reveals that the great weight and preponderance of the evidence supports the trial court's findings of fact that Hazlewood violated provisions of the Texas Administrative Code, and that the proof that Hazlewood violated provisions of Texas law, causing injury to Lafavers, was not so contrary to the overwhelming weight of the evidence that it was clearly wrong and unjust. *Cain*, 709 S.W.2d at 176. Hazlewood's third issue is overruled.

### Award of Attorney's Fees

Hazlewood's fifth issue is that the trial court erred in awarding attorney's fees to Lafavers. Hazlewood fails to identify or cite any legal authority in support his argument, other than claiming that the award of fees was "unjustified." *See* TEX.R.APP.P. 38.1(h) and (i).

Accordingly, Hazlewood failed to adequately brief, and has therefore waived any alleged error by the trial court in relation to this issue. *See* TEX.R.APP.P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284-85 (Tex. 1994)(discussing the "long-standing rule" that an appellate point may be waived due to inadequate briefing); *Rhoades v. Prosser*, 2010 WL 1999150, *4 (Tex.App.--Fort Worth 2010, no pet.h.)(noting same and overruling issue for failing to brief). Hazlewood's fifth issue is overruled.

### Challenged Findings of Fact

18

Hazlewood challenges thirty-three findings of fact, generally attacking the factual sufficiency of the evidence supporting the findings. Hazlewood contends that the findings of fact are manifestly unjust and against the great weight and preponderance of the evidence, but fails to direct this Court to any authority supporting his argument. An appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP.P. 38.1(i); *see also* TEX.R.APP.P. 38.1(h). Noting that Hazlewood's brief focuses on the factual sufficiency of the verdict, we will set Hazlewood's procedural deficiencies aside. The totality of the record contains credible evidence to support the trial court's findings of fact, and the legal conclusions drawn from them. *See State Office of Risk Management v. Edmondson,* 305 S.W.3d 344, 349-50 (Tex.App.--Dallas 2010, no pet.).

Findings of fact can be reviewed for factual sufficiency. *See Zisblatt v. Zisblatt*, 693 S.W.2d 944, 949 (Tex.App.--Fort Worth 1985, writ dism'd). Findings of fact in a case tried to the court have the same force and effect as a jury's verdict on jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We uphold the trial court's findings if there is more than a scintilla of evidence to support them. *Stedman v. Georgetown Sav. & Loan Ass'n*, 595 S.W.2d 486, 488 (Tex. 1979). When reviewing findings of fact, findings will be set aside only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is wrong and manifestly unjust. *MCI Telecommunications Corp.*, 993 S.W.2d at 672.

We have reviewed the record as a whole and find that the evidence is not so weak or against the great weight and preponderance of the evidence that the findings challenged by Hazlewood are manifestly wrong or unjust. While not presented as a specific issue, we overrule Hazlewood's

19

assertion of error relating to the challenged findings of fact.

## Appellee's Request for Sanctions

Lafavers filed a cross-point seeking a sanction for an additional 10 percent of the judgment amount against Hazlewood, asserting that the appeal is frivolous. *See*. TEX.R.APP.P. 45. While the imposition of sanctions is within our discretion, we only do so in truly egregious circumstances. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 282 (Tex.App.--Houston [14th Dist.] 2000, no pet.). We have considered an award of sanctions. However, Hazlewood's appeal is not so frivolous as to warrant sanctions. TEX.R.APP.P. 45; *Angelou*, 33 S.W.3d at 282; *Clopton v. Pak*, 66 S.W.3d 513, 517 (Tex.App.--Fort Worth 2001, pet. denied)(sanctions should be imposed only in egregious circumstances). Lafavers' request for sanctions is denied.

## CONCLUSION

Having overruled each of Appellant's points of error, we affirm the judgment of trial court.


December 12, 2012

                                        CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

20